**MITCHELL'S, INC., Appellant,**

**v.**

**Mary NELMS, Dick P. Wood and Vernon Gatlin, Trustees of the Estate of R. C. Nelms, Jr., Deceased, Appellee.**

**No. 17436.**

Court of Civil Appeals of Texas, Dallas.

May 1, 1970.

Rehearing Denied May 29, 1970.

Morris I. Jaffe, Wynne, Jaffe & Tinsley, Dallas, for appellant.

J. Willard Gragg, Gragg & Storey, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Mitchell's, Inc. brought this action originally against R. C. Nelms, Jr. to recover damages for alleged breach of a contract entered into between Mitchell's, Inc. and R. C. Nelms, Jr. on December 13, 1960. Following trial before the court without a jury judgment was rendered denying plaintiff any recovery against defendant.

## FACTS

The facts were undisputed or stipulated. On July 27, 1948 R. C. Nelms, Jr. was the owner of certain property in the City of Dallas described as Lots 1, 2, 5 and 6 in Block 3/5687 of the Lovers Lane Addition. On that date Nelms, as lessor, leased this property to Mitchell's, Inc., as lessee, for a period of twenty years extending from July, 1948 to August 1, 1968. The monthly rental was $250. The lease provided that lessee had the right to assign the lease without consent of the lessor. On July 27, 1949 this lease was amended to provide that lessee was granted an option to extend the lease for a period of ten years, or until August 1, 1978, at a rental of $500 per month.

A controversy arose between lessor and lessee in which lessor contended that lessee had breached the lease provisions relative to construction of improvements on the premises and a suit was filed styled R. C. Nelms, Jr. v. Mitchell's, Inc. and being No. 37829–B/A in the 14th District Court of Dallas County, Texas. After considerable negotiations this suit was settled and compromised by a written agreement entered into between Nelms and Mitchell's, Inc. on December 13, 1960. The material provisions of the settlement agreement, hereinafter referred to as the "1960 agreement"

and which is the basis of this litigation, are summarized as follows:

In Paragraph 1 it is recited that the present tenant, 11 Sorrento, Inc., is guilty of breach of certain terms of its sublease of the premises in question and that an effort will be made by Mitchell's, Inc. to arrange for such sub-tenant to cure the defects and in the event such is done within a definite time limit the "rental payable to Lessor by Lessee shall be $500.00 per month commencing August 1, 1960 as above set forth."

Paragraph 2 provided:

"The Base Lease provides that Lessee may lease the premises to other parties. In the event Lessee decides to execute a lease to any other person, firm, or corporation covering all or any part of the leased premises, such new lease must have the written consent of Lessor. *Lessor agrees not to unreasonably withhold his consent* and any such new lease shall be subject to the terms and conditions of this agreement insofar as Lessee and Lessor are concerned." (Emphasis supplied.)

In Paragraph 4 it is provided that in the event the present sub-tenant is evicted and a new sublease is made by lessee the rental in the base lease shall be altered to provide that lessor shall receive a minimum monthly rental of $500 per month. Additionally all rental received by lessee over the sum of $1,250 per month shall be divided equally between lessor and lessee. For example, should a sublease provide for payment of $1,500 per month as rental lessee shall be obligated to pay lessor $500 per month plus one-half of the difference between $1,250 and $1,500, or an additional $125 per month.

In Paragraph 6 it is agreed that in the event of cancellation of the lease with 11 Sorrento, Inc. lessee will proceed immediately to obtain a satisfactory sublease of the premises *for the mutual benefit of lessor and lessee.* It was agreed that in the event a sublease acceptable to both lessor

and lessee has not been obtained by September 1, 1961, then the rental due lessor by lessee shall be automatically increased to $500 per month which shall be in force and effect until August 1, 1968, the termination of the primary term of the base lease. It was agreed further that if no sublease is made and lessee exercised his option to extend the base lease for an additional ten years then the rental due lessor for the ten-year period is $1,000 per month and as modified by the formula in Paragraph 4 above.

In Paragraph 11 the parties agreed that in order to obtain a satisfactory tenant it would be necessary to give a lease of at least fifty years' duration in order to obtain proper financing to construct a structure on the property for the new tenant. It was specifically agreed that in the event no new tenant is found for the premises in question by September 1, 1961 the provisions of Paragraph 6 of this agreement go into effect. "In the event no new tenant is found for the premises in question by September 1, 1962, the right to the fifty year or more term provided for herein shall terminate and the provisions of paragraph 6 hereof go into effect 'with the lease terminating as presently provided in the Base Lease at the end of the primary term or at the end of the option term if the option is duly exercised."

The remaining portion of the 1960 agreement relates to arbitration of differences. This provision was never implemented.

It is stipulated that no new tenant was obtained for the premises by lessee, Mitchell's, Inc., before September 1, 1961. No new tenant was secured by Mitchell's, Inc. prior to September 1, 1962.

On May 15, 1963 Mitchell's, Inc. entered into an option agreement with one Clark Bass who was attempting to secure a charter for a national bank. The option agreement provided that if the charter for the bank was obtained Mitchell's, Inc. would sublease the premises in question for a primary term of ten years with two option

periods of fifteen and twenty-five years, totaling fifty years. The sublease was to provide for a base rental of $1,250 per month during the first five years of the lease and of $1,500 per month during each year thereafter, including the years in the option periods. It was agreed that the lease would further provide for additional rental to be paid contingent upon excess deposit over the sum of $10,000,000. This option agreement was forwarded to attorney for Nelms.

On July 15, 1963 Nelms and his attorney received notice that the national banking charter applied for by Bass had been granted and Bass indicated his willingness to exercise his option to acquire the lease referred to in the option.

On September 12, 1963 Mitchell's, Inc. forwarded to Nelms' attorney a proposed lease with Bass which incorporated the terms of the option agreement referred to above.

On September 18, 1963 Nelms' attorney wrote the attorney for Mitchell's, Inc. and rejected the lease. In his letter Nelms' attorney said: "Unless a lease providing for very substantially more rental could be obtained, then it would be his desire and election that the property remain under the terms and conditions of the settlement agreement as set forth therein."

It was stipulated that between the time of the execution of the settlement agreement on December 13, 1960 and until January, 1969 the only lease submitted to Nelms by Mitchell's, Inc. with the request that the same be executed by said Nelms is the one sent Nelms' attorney on September 12, 1963. At no time since December 13, 1960 had Nelms refused to sign a new lease contract as lessor with Mitchell's, Inc. as lessee, and with such lease incorporating the terms of the settlement agreement of December 13, 1960, although Nelms did refuse to sign the lease referred to and tendered on September 12, 1963.

During the trial the appellant offered in evidence two undated and unsigned lease forms concerning International Industries, Inc. and Ralston Purina Company. Mr. Gragg, attorney for Nelms, testified that these were submittted to him in 1968 and 1969 and were never accepted.

On January 31, 1968 Mitchell's, Inc. elected to exercise its option to extend the lease agreement for a ten-year period, as provided in the 1949 amendment to the base lease. In said letter Mitchell's, Inc. said: "Rental for the ten-year option period shall be based upon the provision concerning same in the December 13, 1960 agreement between Mitchell's, Inc. and R. C. Nelms, Jr."

R. C. Nelms, Jr., the original defendant in the action, died during the pendency of the suit and his executrix, executors and trustees were substituted, same being Mary Nelms, Dick P. Wood and Vernon Gatlin, as independent executrix, executors and trustees of the estate of R. C. Nelms, Jr., deceased.

Following presentation of the evidence, the trial court rendered judgment denying Mitchell's, Inc. any recovery against Nelms. At the request of Mitchell's, Inc. the trial court made findings of fact and conclusions of law. The trial court found the facts as above outlined and concluded that: "Nelms did not unreasonably withhold approval of tendered leases, particularly in view of existing contract provisions, and therefore Plaintiff should be denied any recovery."

Mitchell's, Inc. requested the trial court to prepare and file twenty-three additional findings of fact as well as three additional conclusions of law, all of which were denied by the court.

## OPINION

Appellant presents thirteen points of error but concedes in its brief that there are only two principal points to be resolved. Its first contention is that the trial court erred in failing to find and hold that Nelms unreasonably withheld his consent to a sublease of the property and therefore

breached the 1960 agreement. Its second contention relates to the question of damages which should be assessed in the event there was such a breach.

Appellant, in oral argument before this court, conceded the cardinal question in this lawsuit, that is, whether Nelms unreasonably withheld his consent to a sublease of the premises, was one of fact which had been decided adversely to it by the trial court. However, the main thrust of appellant's brief and argument is that the record is entirely devoid of any evidence to support the trial court's finding of fact and conclusion of law that Nelms did not unreasonably withhold his consent and therefore did not breach his contract.

 It is of course elementary that where a case is tried before the court without a jury the trial court acts as a trier of facts and stands in the same position as a jury, being judge of the credibility of witnesses and the weight to be given their testimony. His findings are entitled to the same weight and conclusiveness on appeal as is the verdict of a jury. Where such findings are supported by evidence of probative force they are binding upon appellate courts. We are not authorized to disregard such findings unless we find, as a matter of law, that same are not supported by any evidence or that such findings are so against the great weight and degree of credible testimony as to be manifestly wrong and unjust. As in other cases fact findings may embody inferences properly deducible from the evidence. We will not disturb the fact findings if there is some evidence of probative force to support the same, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. City State Bank in Wellington v. Wellington Independent School District, 173 S.W.2d 738 (Tex.Civ.App., Amarillo 1943, affirmed 142 Tex. 344, 178 S.W.2d 114); Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148 (1953); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951);

American Bankers Ins. Co. v. Farley, 403 S.W.2d 545 (Tex.Civ.App., Fort Worth 1966); Willson v. Johnston, 404 S.W.2d 870 (Tex.Civ.App., Amarillo 1966); 24 Tex. Jur.2d, §.741, p. 420.

While there do not appear to be any Texas cases dealing directly with the question there does appear to be a well defined division of authority from other jurisdictions as to the question of whether language in a lease to the effect a lessor will not unreasonably withhold its consent to an assignment or subletting by the lease is a promise of the lessor, the breach of which may give rise to damages, or be the basis for the termination of the lease, or whether such a provision is merely a condition on or qualification of the clause forbidding the assignment or subletting on the part of the lessee. Whether either or both phases of the provision constitute a promise or covenant depends upon the intention of the parties.

 From a review of these authorities from other jurisdictions we believe that the rule should be that a provision in a lease or contract that the lessor will not unreasonably withhold consent to an assignment or sublease of premises is in fact intended to be a promise or covenant on the part of the lessor and should be so considered. Such a provision is a promise upon which an action for damages may be grounded for breach thereof. 3A Thompson on Real Property, Sec. 1213, 1968 Pocket Part, p. 4; 26 Fordham Law Review 352; Singer Sewing Machine Co. v. Eastway Plaza, Inc., 5 Misc.2d 509, 158 N.Y.S. 2d 647 (1957); Rock County Savings & Trust Co. of Janesville v. Yost's, Inc., 36 Wis.2d 360, 153 N.W.2d 594 (1967); and Comprehensive Note in 31 A.L.R.2d 831–838, and cases therein cited.

What constitutes the elements of unreasonableness in the act of withholding consent presents a question not simple in resolution. Appellant seeks to compare unreasonable withholding to the arbitrary nature of the lessor's refusal to join in a sublease

as in Grossman v. Barney, 359 S.W.2d 475 (Tex.Civ.App., San Antonio 1962, writ ref'd n. r. e.). There the lessor refused to permit a sublease and the contention was made that such refusal was arbitrary. The court denied this contention, holding that the proof did not establish the arbitrary nature of lessor's refusal. In doing so the court adopted the definition of "arbitrary" as given in Webb v. Dameron, 219 S.W.2d 581, 584 (Tex.Civ.App., Amarillo 1949), in which it was said that a decision is arbitrary when it is made without fair, solid and substantial cause or reason. The court further said that although a decision is mistaken or wrong, it is not necessarily arbitrary.

Considering arbitrary refusal to act the court in Travis-Williamson County Water C. & I. District v. Page, 358 S.W.2d 158, 162 (Tex.Civ.App., Austin 1962), said that arbitrary acts are capricious, despotic, tyrannical, bound by no law, and are performed witthout regard to principles.

In Edelman v. F. W. Woolworth Co., 252 Ill.App. 142 (1929), the lease agreement contained the identical language concerning unreasonable withholding of consent. The court applied the arbitrary yardstick in considering the facts as to whether the refusal to consent was unreasonable. To the same effect see Cedarhurst Park Apartments, Inc. v. Milgrim, 55 Misc.2d 118, 284 N.Y.S.2d 330 (1967).

Webster's New International Dictionary, 2d Edition, defines "Unreasonable" as: "Not conformable to reason; irrational; also, not governed or influenced by reason. Beyond the bounds of reason or moderation; immoderate; exorbitant."

Some courts have said that the term "unreasonable" conveys the same idea as irrational, foolish, unwise, absurd, silly, preposterous, senseless, and stupid. Southern Kansas State Lines Co. v. Public Service Commission, 135 Kan. 657, 11 P.2d 985 (1932); Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 287 N. W. 122, 131 (1939).

Another court has said that the determination of what is "unreasonable" is one where, under the evidence presented, there is no room for difference of opinion among reasonable minds. Thurman v. Meridian Mutual Ins. Co., 345 S.W.2d 635, 639 (Ky. 1961).

We have carefully considered the entire record in this case in the light of the foregoing rules and authorities and we have reached the conclusion, and so hold, that there was evidence of probative force to support the trial court's finding of fact and conclusion of law that Nelms did not unreasonably withhold his consent to leasing the property in question. It was manifestly the intention of the parties that appellant and appellee would cooperate with each other in attempting to find an acceptable sublessee and to grant to such sub-lessee a fifty-year lease. This would comprehend the building of permanent and valuable improvements on the property. However, it was specifically spelled out in Paragraph 11 of the 1960 agreement that if no new tenant is found for the premises by September 1, 1962, the right to the fifty-year or more term provided for shall terminate and the provisions of Paragraph 6 of the agreement shall go into effect. Reference to Paragraph 6 reveals the unmistakable intention of the parties to the effect that if a sublease acceptable to both lessor and lessee has not been obtained by September 1, 1961 then the rental due lessor by lessee shall automatically be increased to $500 per month until August 1, 1968, the present termination of the primary term of the base lease. Then, during the extended ten-year option the rental payable is $1,000 per month. Even this is modified by the additional rental formula in Paragraph 4 of the agreement.

It is without dispute that no sub-lessee was obtained either on September 1, 1961 or September 1, 1962. Therefore, the provisions of Paragraph 6 of the 1960 agreement went into effect and Nelms was no longer obligated to grant a fifty-year lease. Such proposed fifty-year lease with Bass

was not tendered until some time in 1963. At that time Nelms was receiving $500 per month as rental and such base lease extended only until 1968. He then was to receive $1,000 per month for a ten-year extended option period, terminating September 1, 1978. The lease proposed by appellant would extend to the year 2013. Such would provide Nelms with a monthly rental of $500 for the first five years and $625 per month for the remaining period of the lease with only a contingent possibility of an increase based upon speculative bank deposit increases. We do not think it can be said that Nelms acted unreasonably or arbitrarily in refusing to join in the proposed lease to Bass.

With reference to the proposed subleases to International Industries, Inc. and Ralston Purina the record is somewhat vague and indefinite not only as to terms and conditions but concerning timing and exact action taken. Be that as it may we are convinced that the record amply supports the trial court's finding and conclusion that Nelms did not unreasonably withhold his consent to any or all of the proposed subleases.

Appellant's points complaining of the refusal of the trial court to make additional findings of fact are without merit and are overruled. We have carefully considered each of the requested findings and conclude that same are either immaterial or that the findings made by the court are sufficient to meet the request of appellant. The trial court is not required to make findings of fact of evidentiary nature but is only required to make findings on ultimate, controlling and material issues. The requested findings concerning damages become immaterial in the light of our holding that the trial court's judgment, denying any recovery, was correct.

We have carefully examined all of appellant's points of error and find the same to be without merit and they are therefore overruled.

The judgment of the trial court is affirmed.