Sanford L. BAUMAN, Individually and as Trustee, and Stacy B. Smith, Plaintiffs-Appellees,

v.

CENTEX CORPORATION, Defendant-Appellant.

No. 77–3479.

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1980.

Rehearing Denied March 17, 1980.

Jack Pew, Jr., John A. Gilliam, C. Taylor Ashworth, Dallas, Tex., for defendant-appellant.

Joel H. Pullen, Franklin D. Houser, San Antonio, Tex., Margaret A. Cooper, Austin, Tex., for plaintiffs-appellees.

Before THORNBERRY, GODBOLD and TATE, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiffs Bauman and Smith sued Centex Corporation for breach of contract, state law fraud, and federal securities law

violations, plus breach of Bauman's employment contract. The jury found for plaintiffs on all issues and awarded substantial compensatory and exemplary damages. The district court added stipulated attorneys' fees. We affirm the award in its entirety.

## I. The facts

Centex Corporation is a large conglomerate whose subsidiary corporations include real estate, home building and general construction, and cement and related companies. Bauman was president and majority stockholder of Constructional Chemicals, Inc. (CCI), manufacturer and seller of Airsene, a cement additive. Smith was an employee and minority stockholder of CCI. In 1970 Centex acquired CCI as a wholly-owned subsidiary. CCI stockholders exchanged their stock for 20,000 shares of Centex stock. They acquired one half of the Centex stock outright, while the other half was placed in escrow subject to "earnout" based on CCI's performance during the next four fiscal years.[1] As part of the escrow agreement Centex promised that it would take no action having a primary purpose of reducing CCI's net income during the earnout period. Bauman was given an employment contract as president of CCI through March 31, 1975. His salary was to be increased by $5,000 in any year CCI's net income equalled $60,000.

Evidence was introduced at trial of a number of misrepresentations made by Centex to Bauman prior to the acquisition of CCI. The district court's charge summarized the claimed misrepresentations as follows:

> More specifically, plaintiffs claim that defendant represented to them that Centex would furnish CCI with substantial "captive business," and that as a result plaintiffs' earn-out would easily be attained; that Mr. Bauman would continue to be employed by CCI during the earn-

out period and that he would make all operational decisions as before the acquisition by Centex, with any expansion of CCI to be approved by Mr. Bauman. Defendants denied making any misrepresentations during the negotiations.

Bauman and CCI did not have smooth sailing after the acquisition. CCI earned $29,277 net pre-tax income in 1972 but lost money in each of the next three years, and the earnout was never achieved.

On May 23, 1973, Bauman was removed as head of CCI. He retained the title of president, but the Centex board of directors created a higher level officer, and Fred Brown was appointed to take over the running of CCI. There was evidence that Brown—who was not initially told about the earnout—had orders from Centex to expand CCI in a way that would eliminate CCI's short term profits.

Bauman did not get along with Brown or with the Centex management. On March 1, 1974, Bauman was fired by Centex, although his salary continued to be paid for another year under the terms of his employment contract non-competition clause.

The jury found for plaintiffs on each of the fraud, breach of escrow contract, and securities law claims, and awarded $253,000 actual damages. Exemplary damages of $75,000 were awarded under the fraud claim. The district court added attorneys' fees, stipulated to be $50,000, as an element of exemplary damages. Bauman was awarded $10,000 for breach of his employment contract.

## II. Texas law fraud claim

The state law[2] fraud claim by itself supports all of the damages assessed for the plaintiffs as a group, both actual and exemplary, including attorneys' fees. If this claim is upheld it will be unnecessary to reach the breach of escrow contract or federal securities law claims. Bauman's claim

---

1. If CCI's net pre-tax income equalled $400,000 for any fiscal year between April 1, 1971, and March 31, 1975, the escrow would end and the stock would be distributed to the CCI stockholders. If it exceeded $200,000 a portion of

the stock would be released. If these income levels were not reached by March 31, 1975, the stock would revert to Centex.

2. Tex.Bus. & Comm.Code § 27.01.

for breach of his employment contract is considered separately below.

### A. Statute of limitations

An initial question is whether the Texas law fraud claim is barred by limitations. Federal jurisdiction in this case was invoked by the federal securities law claim. We are able to consider the state claims only under pendent jurisdiction. While there has been no definitive holding on the issue, federal courts often apply state law to pendent claims. *See Cameron v. Outdoor Resorts of America, Inc.*, 608 F.2d 187 (5th Cir. 1979); *Roberts v. Williams*, 456 F.2d 819 (5th Cir.), *cert. denied*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971); *Smith v. Spina*, 477 F.2d 1140 (3d Cir. 1973). Such result is clearly appropriate when, as here, the issue is statute of limitations and no federal statute exists. *Cf. McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 891 (5th Cir. 1979). Texas law fixes the limitation period for actions based upon fraud at two years. *L.C.L. Theatres v. Columbia Pictures Indust.*, 566 F.2d 494, 496 (5th Cir. 1978); *Ryan v. Collins*, 496 S.W.2d 205 (Tex.Civ.App.1973); *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940).

The second question is when plaintiffs' cause of action accrued so as to trigger the running of the two year limitations period. The general rule is that a tort cause of action accrues when the tort is committed. This rule is followed despite difficulty in ascertaining damages until a later date. *Quinn v. Press, supra* ; *Atkins v. Crosland*, 417 S.W.2d 150 (Tex.1967).

The Texas Supreme Court has, however, stated an exception to this general rule. In *Atkins v. Crosland, supra*, it was held that a cause of action against an accountant for negligently preparing a tax return did not begin to run until the I.R.S. assessed a tax deficiency. The court outlined the following inquiry to be made:

> A legal injury must be sustained, of course, before a cause of action arises. It is said in 34 Am.Jur. Limitations of Actions § 160, p. 126:
>
> "As regards the running of the statute of limitations applicable to torts, a

cause of action accrues only when the force wrongfully put in motion produces the injury, the invasion of personal or property rights accruing at that time." (citing the *Quinn Case, supra.*)

And see *Houston-American Finance Corp. v. Travis*, 343 S.W.2d 323 (Tex.Civ.App. 1960, writ ref'd n. r. e.). A helpful and often quoted test for determining when the cause of action accrues is found in 54 C.J.S. Limitations of Actions § 168, pp. 122–123:

> "The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not of itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff. If the act is of itself not unlawful in this sense, and plaintiff sues to recover damages subsequently accruing from, and consequent on, the act, the cause of action accrues, and the statute begins to run, when, and only when, the damages are sustained; and this is true although at the time the act is done it is apparent that injury will inevitably result.
>
> "If, however, the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort * *." See *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336 (1954).

*Id.* at 153.

Another analogous case is *Linkenhoger v. American Fidelity & Cas. Co.*, 152 Tex. 534, 260 S.W.2d 884 (1953), in which the Texas Supreme Court held that a cause of action for negligent failure of an insurance company to settle within policy limits did not accrue until a judgment was awarded in excess of the policy. The court quoted the

Restatement (First) of Torts, § 899 as follows:

> A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff. Thus where one makes a fraudulent misrepresentation to another, the tort is not complete until the other acts thereon to his detriment.

*Id.* at 886. The *Quinn* case was thus distinguished by the Texas Supreme Court as not reaching the issue of whether plaintiffs were injured by the false statements. *Id.*

█ In the present case the plaintiffs knew of the misrepresentations more than two years before suit was filed. Until the escrow agreement expired and the stock reverted to Centex there was no legal injury, however, since it was possible the earnout would be made in spite of any misrepresentations by defendants. Misrepresentation in itself is not "a completed wrong" until there is an invasion of some right of the plaintiff. Texas courts have held that "[a] false statement, alone, does not create a cause of action for fraud . . . there must be reliance by the complainant to his detriment." *Finger v. Morris*, 468 S.W.2d 572, 577 (Tex.Civ.App.1971). Furthermore, "[t]he general rule is that there can be no legal or actionable fraud unless the act *resulted in injury* to the person defrauded." *Travelers Ins. Co. v. Delta Air Lines, Inc.*, 498 S.W.2d 443, 447 (Tex.Civ.App.1973) (emphasis original). Thus until the escrow agreement expired and the stock was lost, plaintiffs had sustained no injury, and the misrepresentations had not become a legal injury. Consequently, plaintiffs' cause of action did not accrue until two and one half months before suit was filed.

## B. Sufficiency of the evidence

Following the standard set out in *Boeing Co. v. Shipman*,[3] our sole function as an appellate court is "to ascertain whether there is a rational basis in the record for the jury's verdict; we are forbidden to usurp the function of the jury by weighing the conflicting evidence and inferences and then reaching our own conclusion." *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1288 (5th Cir. 1974).

There was conflicting testimony on all of the claimed misrepresentations. In answer to interrogatories the jury found that defendant made a false representation of a past or existing material fact and made a material false promise to do an act with the intention of not fulfilling it. Essentially defendant complains that the jury credited the testimony of plaintiffs and plaintiffs' witnesses rather than evidence offered by defendant. Plaintiffs' evidence was not inherently insubstantial or incredible.

█ Faced with conflicting credible evidence it was within the jury's province to resolve the conflict in favor of plaintiffs. While the evidence for Centex was persuasive, the evidence for plaintiffs was substantial and also persuasive. Denial by the trial court of defendant's motions for a directed verdict and judgment n. o. v. was not error. Similarly, given the conflicting evidence, denial of defendant's motion for a new trial was not abuse of discretion. *Davis v. Yellow Cab Co.*, 220 F.2d 790, 791 (5th Cir. 1955).

Since the jury's award of actual and exemplary damages can be upheld by the Texas law fraud claim we need not reach defendant's contentions regarding the breach of escrow contract and federal securities law claims.

3. On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence that supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. 411 F.2d 365, 375 (5th Cir. 1969) (en banc).

### III. Breach of employment contract

Bauman's claim for breach of his employment contract was based on the theory that Centex's actions kept CCI's net income below $60,000 per year. Under the terms of the employment contract Bauman would have received $5,000 additional salary for each year CCI earned $60,000 or more. The jury found for Bauman and awarded $10,000 damages.

■ Defendant challenges the sufficiency of the evidence to uphold this portion of the jury's verdict. Once again there is conflicting evidence in the record, which the jury resolved in favor of Bauman. The evidence presented by plaintiffs and their expert on CCI's potential earnings, absent defendant's actions, was not unduly speculative. Bauman's damages were based on the bonus amount specified in his employment contract and were determinable with reasonable certainty. *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 804 (5th Cir. 1973).

### IV. Admission of evidence

■ Defendant challenges the admission of testimony of plaintiffs' expert witness, Burton Mallow, a management consultant and certified public accountant of 17 years' experience. Its first point is that Mallow's opinion was based in part on hearsay materials not introduced in evidence. Admission of expert testimony is within the discretion of the district court and will be reversed only for abuse of discretion. *Liberty Mutual Insurance Co. v. Davis*, 412 F.2d 475, 485 (5th Cir. 1969). Adoption of the Federal Rules of Evidence[4] has further

circumscribed objections of the type made here. In general whether facts relied on by an expert are in evidence, or even could be in evidence, is not relevant. The pertinent inquiry under Rule 703 is whether the facts are of a type reasonably relied on by experts in the particular field. The object of this inquiry is of course to determine the reliability of the expert's testimony.[5]

■ Mallow's testimony was based primarily on his review of CCI's files and Centex's financial statements. He also relied in part on research about Centex done at the University of Houston library. Mallow testified that he read "all available information in that library." In giving his opinion of the Centex management he referred to "[t]he financial community" and "the stock analyst people that are analyzing companies for a living . . . ." (R. Vol. 4 p. 24–25). In earlier and later testimony he relied only on financial documents of CCI and Centex. (R. Vol. 4 p. 16–17, 26.) The record indicates that these sources, while not all in evidence, are of the type reasonably relied on by certified public accountants in evaluating the operation of corporations and did not render the testimony unreliable.[6] There was no abuse of discretion in admitting the testimony based in part on information not in evidence.

■ Defendant's second objection is that Mallow's testimony was inadmissible because it was in part phrased in terms of "intent" or "knowledge." Rule 704 of the Federal Rules of Evidence abolishes the "ultimate issue" rule, which previously limited testimony that was felt would "invade the

---

**4.** Rule 703 provides:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**5.** As one commentator has stated:

Since Rule 703 is intended to liberalize previous practice, the court should concentrate on the reliability of the opinion rather than on technical demonstration that hearsay was employed.

Weinstein & Berger, 3 Weinstein's Evidence, ¶ 703(03) p. 703–17 (1978).

**6.** *Nanda v. Ford Motor Co.*, 509 F.2d 213, 222 (7th Cir. 1974): "Facts or data found in the literature of the profession, even though not themselves admissible in evidence, properly

province of the jury." [7]   The approach adopted by the Rules is whether an expert opinion will be helpful to the jury in understanding the evidence or determining a fact in issue.[8]  The evidence in this case involved issues of corporate management of sufficient complexity to call for expert clarification.  Testimony of an expert familiar by training and experience with corporate finance would clearly be helpful to the jury. The district court did not abuse its discretion in admitting the expert testimony.

### V.   Attorneys' fees

The district court after the verdict awarded $50,000 attorneys' fees to plaintiffs as part of the exemplary damages under state law fraud.  The parties stipulated that $50,000 was a reasonable amount of attorneys' fees for the case.  In its order awarding attorneys' fees the court held that plaintiffs had requested such fees in advance of trial as part of exemplary damages and that the issue was not submitted to the jury because of a stipulation by the parties that the court would decide the issue after the verdict.[9]

No evidence of attorneys' fees was put on at trial, the jury was not instructed to consider attorneys' fees as part of exemplary damages, and counsel did not argue that the jury should award such fees, even though under Texas law attorneys' fees are a proper element of exemplary damages. *Lack's Stores, Inc. v. Waisath*, 479 S.W.2d 406 (Tex.Civ.App.1972) no writ; *Carter v.*

*Barclay*, 476 S.W.2d 909 (Tex.Civ.App.1972) no writ; *Fitz v. Toungate*, 419 S.W.2d 708 (Tex.Civ.App.1967) *writ ref'd n. r. e.*  This is not, therefore, a case where there has been a double recovery by plaintiffs. *Markman v. Gaitz*, 499 S.W.2d 692 (Tex.Civ. App.1973) *writ ref'd n. r. e.*  Attorneys' fees were considered and awarded only once, by the court, and were not part of the jury verdict.

The parties stipulated in writing that $50,000 was a reasonable amount of attorneys' fees for the services rendered in this case.  No other evidence of amount or reasonableness was required to support the court's award.  *Farley v. Farley*, 503 S.W.2d 679 (Tex.Civ.App.1973) *writ ref'd n. r. e.*, requires only that there be some evidence to support the award so it is not based on mere speculation or surmise.  This requirement is met by the stipulation of the parties.

AFFIRMED.

form a part of the basis for an expert's opinion."

7.  Rule 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

8.  *See* Notes of Advisory Committee on Rule 704; *cf.* Fed.R.Evid. 702.

9.  Defendant now challenges whether any such stipulation was made and asserts that if it was made the district court was not entitled to rely on it because it was not part of the record. Defendant cites Rule 5 of the District Court:

No agreement between the parties or their attorneys in respect to proceedings in court shall be binding unless made in open court or

reduced to writing and signed by the parties or their attorneys, unless the court in a plain case of abuse shall order otherwise.

Here the district judge was present in the conference at which the stipulation was discussed.  In his order awarding attorneys' fees he made the stipulation part of the record to avoid any possibility of the defendant's whipsawing the court and the plaintiffs.  The court held: "Defendant should not be permitted on the one hand to stipulate that attorneys' fees would be left for the Court's consideration, and on the other hand to assert that Plaintiffs' failure to object to the charge was a waiver of that element of exemplary damages."  R. 412–13. We may, therefore, consider the stipulation as part of the record on appeal.