**B.M.B. CORPORATION,**
**Plaintiff–Appellant,**
**Cross–Appellee,**

v.

**McMAHAN'S VALLEY STORES and Sussex Group, Ltd., Defendants–Appellees, Cross–Appellants.**

**No. 88–1014.**

United States Court of Appeals,
Fifth Circuit.

April 12, 1989.

---

Carl H. Green, Steven L. Hughes, Grambling & Mounce, Alan R. Hunn, El Paso, Tex., for plaintiff-appellant cross-appellee.

Richard Munzinger, Jeffrey S. Alley, Scott, Hulse, Marshall, et al., El Paso, Tex., for defendants-appellees cross-appellants.

Before CLARK, Chief Judge, TIMBERS * and RUBIN, Circuit Judges.

TIMBERS, Circuit Judge:

In this diversity action, a judgment n.o.v. was entered in the Western District of Texas, El Paso Division, Lucius D. Bunton, *District Judge,* in favor of McMahan's Valley Stores ("McMahan's") and Sussex Group, Ltd. ("Sussex") following a jury verdict in favor of B.M.B. Corporation ("B.M.B."). The district court held that, contrary to the jury's verdict, McMahan's was not liable for fraud, fraudulent concealment, or negligent misrepresentation in

obtaining B.M.B.'s consent to an assignment from Sussex to McMahan's of a lease for space in a building owned by B.M.B. The court set forth in its judgment a declaration of the respective rights and obligations of the parties under the lease. While the court initially awarded attorneys fees to McMahan's and Sussex, it later reversed itself and held that none of the parties should recover attorneys fees.

On appeal, B.M.B. primarily challenges the judgment n.o.v. McMahan's and Sussex on their cross-appeal challenge the denial of their attorneys fees. For the reasons set forth below, we affirm both the judgment n.o.v. against B.M.B. and the denial of attorneys fees to McMahan's and Sussex.

I.

We set forth only those facts believed necessary to an understanding of the issues raised on appeal.

On May 1, 1965, B.M.B. agreed to lease to American Furniture Co., Inc. for 25 years space in Bassett Center, a building to be constructed in El Paso, Texas. The lease required that the premises be used only for "the sale, storage, or display of goods, wares and merchandise". It contained provisions for both a "Fixed Minimum Rent" and a "Percentage Rent", the latter to be payable only if the lessee's gross retail sales exceeded a stated minimum. Assignment of the lease was permitted upon the consent of B.M.B., the lessor. The consent of B.M.B. was not to be "unreasonably" withheld. On December 31, 1965 the lease was assigned to City Products Corp./Household Merchandising, Inc. which operated the premises as a furniture store for the next 20 years.

In 1972, B.M.B., in exchange for its agreement to enlarge the building and make certain other improvements in the property, changed certain provisions in the lease. Among these changes was an increase in the percentage rent from a lower to a higher threshold and an increase in the fixed minimum rent. There also was a

* Circuit Judge of the Second Circuit, sitting by designation.

change in the lease term and in the renewal options, but the provisions concerning assignment of the lease and use of the premises remained unaffected.

In either late 1984 or early 1985, the lease was assigned to Sussex. Shortly thereafter, a series of meetings between B.M.B., Sussex and McMahan's were held. On April 1, 1985, B.M.B. entered into a consent to assignment and amendment of the lease pursuant to which McMahan's succeeded to the interests of Sussex as lessee.

While the parties do not dispute the details of the consent to the assignment or the amendments of the lease, B.M.B. claims that during these meetings McMahan's made certain representations concerning projected sales volume for its merchandise at Bassett Center and that B.M.B. relied on these "guarantees" in consenting to the assignment of the lease from Sussex to McMahan's. McMahan's disputes this. It contends that any representations made were at best statements of hope as to the future rather than any firm commitment on its part. In any event, moreover, McMahan's asserts that B.M.B. could not legally have withheld its consent to the assignment. B.M.B. also claims duress during these negotiations in that Sussex, apparently under pressure from its bank to sell the lease quickly, threatened B.M.B. with a lawsuit if it did not consent to the assignment. Sussex asserts that such a lawsuit would have been justified and a threat to file it did not constitute duress.

Shortly after the assignment, McMahan's proceeded to make a number of changes in the quality of merchandise sold at the store and in its hiring and employee compensation policies. This had the effect of significantly reducing from former levels the gross retail sales at the store which in turn reduced the amount of percentage rent due B.M.B. under the lease to the point where B.M.B. began receiving no percentage rent at all. It is undisputed, however, that McMahan's has paid all rent actually due under the lease.

In October 1986, B.M.B. commenced the instant action in the Western District of Texas, El Paso Division, alleging breach of contract, breach of implied covenant and fraud in the inducement on the part of McMahan's in procuring B.M.B.'s consent to the assignment of the lease from Sussex to McMahan's. In subsequent amendments to its complaint, B.M.B. added causes of action for negligent misrepresentation and promissory estoppel against McMahan's and added Sussex as a defendant, alleging that Sussex had subjected B.M.B. to duress in procuring B.M.B.'s consent to the assignment. Both McMahan's and Sussex counterclaimed, seeking a declaratory judgment of their rights and obligations under the lease.

The case was tried to a jury during the period October 28–31, 1987. The issue of duress was removed from the jury on a directed verdict against B.M.B. at the close of B.M.B.'s case-in-chief. The jury returned a special verdict finding McMahan's liable for fraud, fraudulent concealment, and negligent misrepresentation. It awarded B.M.B. $100,000 in compensatory damages for past lost rental and $50,000 in punitive damages.

The court subsequently entered a judgment dated November 30, 1987 which denied B.M.B.'s motion for judgment on the verdict and its conditional motion for a new trial; and it granted McMahan's and Sussex' motion for judgment n.o.v., finding that B.M.B.'s consent to the assignment "was not improperly induced, obtained or procured by any party, whether by fraud, negligence or any other improper act, conduct or omission". The court also set forth a detailed declaration of the rights and obligations of the parties under the lease.

The court originally awarded attorneys fees to McMahan's and, later, to Sussex. It subsequently reversed itself and held that, since B.M.B. had prevailed before the jury, it would not be "equitable and just" to award attorneys fees to McMahan's or Sussex pursuant to the Texas Uniform Declaratory Judgments Act ("TUDJA"), Tex. Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (Vernon 1986). The court, however, did assess costs against B.M.B.

We affirm.

## II.

B.M.B. argues that the court erred in granting judgment n.o.v. since there was substantial evidence to support the jury's findings of fraud, fraudulent concealment and negligent misrepresentation on the part of McMahan's. In response, McMahan's argues that the judgment n.o.v. was correct because, even if there were fraud or misrepresentation (which it denies), B.M.B. sustained no harm because B.M.B. could not reasonably have refused to consent to the assignment of the lease from Sussex to McMahan's. After carefully examining the briefs and record and after hearing oral argument, we agree with McMahan's that judgment n.o.v. was correct.

■ Our starting point is the lease itself, particularly the provisions regarding use of the premises, percentage rent, and assignment. The lease provides that the premises in question may be used only for "the sale, storage or display of goods, wares and merchandise" and shall not be used for any illegal purpose. Nowhere does the lease provide, as B.M.B. suggests, that "quality furniture" must be displayed or sold. We read the plain language of the lease to mean just what it says. Furthermore, the lease nowhere provides that the lessee is obligated to maximize the percentage rent paid to B.M.B. We find no support for B.M.B.'s contention that an implied covenant to this effect ever existed. *See Danciger Oil & Refining Co. v. Powell,* 137 Tex. 484, 490, 154 S.W.2d 632, 635 (1941) (implied covenant must arise from presumed intentions of parties as gathered from contract read as a whole); *Weil v. Ann Lewis Shops, Inc.,* 281 S.W.2d 651, 654–56 (Tex. Civ.App.—San Antonio 1955, writ ref'd)

(same); *Palm v. Mortgage Investment Co.,* 229 S.W.2d 869, 873 (Tex.Civ.App.—El Paso 1950, writ ref'd n.r.e.) (same). If, under Texas law, there was no implied covenant in 1965 when the lease originally was signed, we fail to see how 20 years later there could spring into being such a covenant obligating McMahan's to maximize the percentage rent.[1]

The lease also provides that any assignment of it must be consented to by B.M.B., the lessor, but that B.M.B. shall not "unreasonably withhold" such consent. McMahan's claims that B.M.B. could not reasonably have withheld its consent, whether or not B.M.B. was misled as to future sales. B.M.B. on the other hand claims that it could reasonably have withheld its consent to the assignment had it known the "true intention" of McMahan's with regard to the premises.[2] In this diversity action, Texas law would control. The parties agree, however, that the Supreme Court of Texas apparently has not squarely ruled on what is a reasonable refusal to consent to the assignment of a lease.

In *Mitchell's, Inc. v. Nelms,* 454 S.W.2d 809 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.), a Texas appellate court addressed the issue of what constitutes reasonable grounds for a lessor to withhold consent to a sublease. Although the court in *Mitchell's* discussed various definitions of unreasonableness in the abstract, it relied on the specific terms of the contract to hold that the landlord had acted reasonably in withholding his consent. The court construed the contract at issue as providing that the lessor and lessee would have only until a specified date to find an acceptable sublessee for a fifty-year lease. Since that date had passed when the lessee proposed a

---

1. B.M.B. claims as error the district court's refusal to submit certain interrogatories and instructions to the jury regarding the issue of implied covenant. Since we do not find support for such a covenant, we hold that the court did not abuse its discretion in declining to use these proffered interrogatories and instructions.

2. The cases cited by B.M.B. in support of this claim, however, are inapposite. As B.M.B. correctly points out, there is authority for the proposition that an objection to an assignment is commercially reasonable when the proposed as-

signee admits that it never would generate gross sales sufficient to produce percentage rental income equivalent to that consistently being paid by the prior lessee. *E.g., John Hogan Enters., Inc. v. Kellogg,* 187 Cal.App.3d 589, 231 Cal.Rptr. 711 (1986); *Haack v. Great Atlantic & Pacific Tea Co.,* 603 S.W.2d 645 (Mo.Ct.App.1980). In the instant case, however, there is no indication that McMahan's cannot generate percentage rental income equal to prior levels. That it has not yet generated such income does not mean it *never* can do so.

sublease, the lessor had merely exercised his right under the contract in withholding his approval. *Id.* at 814–15; *see* Annotation, *Construction and Effect of Provision in Lease that Consent to Subletting or Assignment Will Not Be Arbitrarily or Unreasonably Withheld,* 54 A.L.R.3d 679, 691 (1973).

It thus appears that under Texas law, the reasonableness of a refusal to consent to an assignment or sublease is determined by reference to the terms and conditions of the original lease. This is consistent with the position of the Second Restatement of Property that refusing a sublease or assignment is reasonable when based on the lessee's ability or inability to pay the rent and perform the other obligations contained in the lease. A. Johnson, Jr., *Correctly Interpreting Long–Term Leases Pursuant to Modern Contract Law,* 74 Va.L.Rev. 751, 763–64 & n. 41 (1988) (citing Restatement (Second) of Property § 15.2 reporter's note 7 (1976)).

Under such an approach, it is unreasonable for the landlord to condition consent to a transfer on a change in the terms and conditions of the original lease. *Id.* at 758. As one court applying Florida law explained, " '[d]enying consent ... in order that the landlord may charge a higher rent than originally contracted for [has] been held [an] arbitrary reason[ ] failing the tests of good faith and reasonableness under commercial leases' ". *Amjems, Inc. v. F.R. Orr Constr. Co.,* 617 F.Supp. 273, 279 (S.D.Fla., S.D.1985) (quoting *Fernandez v. Vazquez,* 397 So.2d.1171, 1174 (Fla.Dist.Ct. App.1981)). Commercial reasonableness thus is determined by reference to the provisions negotiated in the original lease between the landlord and tenant, not by reference to what the landlord later finds most economically advantageous.

◼ We determined above that under the original lease, there was no implied covenant that the lessee maximize the percentage rent paid to B.M.B. Thus, B.M.B. could not reasonably have conditioned its consent to the assignment on McMahan's guarantee of a certain level of percentage rents.

Even assuming arguendo any fraud or misrepresentation by McMahan's as to future sales, it would be immaterial and would not be the proximate cause of any harm to B.M.B. since one induced to do something one already is obligated to do suffers no injury. *Mason v. Babin,* 474 S.W.2d 809, 812 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). We hold that judgment n.o.v. was properly granted.[3]

### III.

This brings us to the question of whether the denial of attorneys fees to McMahan's and Sussex was error. We hold that it was not.

Under TUDJA, *supra,* it was for the district court, in its discretion, to determine whether it would be "equitable and just" to grant attorneys fees. *Id.* at § 37.009; *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). When the court granted judgment n.o.v., it originally awarded attorneys fees to McMahan's and, later, to Sussex. Subsequently it reversed itself and held that, because B.M.B. had prevailed on three issues before the jury, awarding attorneys fees to McMahan's and Sussex would not be "equitable and just".

◼ McMahan's and Sussex base a right to recover attorneys fees on the counterclaim for declaratory judgment. Under Texas law, the TUDJA is not available to settle disputes already pending before the court. When a party brings a declaratory judgment action by way of a counterclaim, and that counterclaim involves only issues already raised by the original claim, the party is not entitled to an award of attorneys fees. *John Chezik Buick Co. v. Friendly Chevrolet Co.,* 749 S.W.2d 591, 594–95 (Tex.Ct.App.—Dallas 1988, writ denied); *Narisi v. Legend Diversified Investments,* 715 S.W.2d 49, 51–52 (Tex.Ct.App.—Dallas 1986, writ ref'd n.r.e.); *Johnson v.*

---

3. Since we uphold the judgment n.o.v. on this ground, we do not reach B.M.B.'s contention that the court's refusal to grant judgment n.o.v. in its favor on the issue of future damages was error.

*Hewitt,* 539 S.W.2d 239, 240–41 (Tex.Civ. App.—Houston 1976); *Joseph v. City of Ranger,* 188 S.W.2d 1013, 1014 (Tex.Civ. App.—Eastland 1945, writ ref'd w.o.m.).

We thus affirm the denial of attorneys fees to McMahan's and Sussex, although for a reason other than that relied upon by the district court.

## IV.

To summarize:

We affirm the judgment n.o.v. against B.M.B. and affirm the denial of attorneys fees to McMahan's and Sussex.

AFFIRMED.