United States Court of Appeals,

Fifth Circuit.

No. 94-20500.

OLIVER RESOURCES PLC and Oliver Resources, (Argentina) SA, Plaintiffs-Appellants,

v.

INTERNATIONAL FINANCE CORPORATION, Defendant-Appellee.

Aug. 30, 1995.

Appeals from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal concerns both tort and contract actions brought by a putative assignee against one of the original parties to a joint venture. Because we find that the tort claims are barred by the statute of limitations and the putative assignee does not have standing under Texas law to bring a contract claim, we affirm the district court's granting of summary judgment against the putative assignee.

FACTS AND PROCEDURAL HISTORY

On June 6, 1988, Defendant-Appellee International Finance Corporation ("IFC") became a partner in a joint venture with several companies, including Santa Fe Energy Company of Argentina ("Santa Fe") and Nomeco Argentina Oil Company ("Nomeco"), in an oil and gas exploration project in Argentina. The partners were parties to a Joint Operating Agreement ("JOA"). Article 12.2 of the JOA specifically provides that all partners must consent before any partner may assign all or any part of its interest to a

non-affiliated company, and that such consent may not be withheld unreasonably.

On December 21, 1988 and May 25, 1990, Plaintiffs-Appellants Oliver Resources PLC and Oliver Resources (Argentina) S.A. (collectively "Oliver") entered into agreements with Santa Fe and Nomeco, respectively, to obtain all or a portion of the interests of Santa Fe and Nomeco in the partnership. Accordingly, Santa Fe and Nomeco each requested the other JOA parties to approve the assignments. Pursuant to such request, IFC began investigating Oliver's ability to pay for such a large commitment and requested financial information on Oliver. According to IFC, however, the information was not forthcoming and any information that was eventually released was either old or failed to satisfy IFC. IFC decided not to approve the assignments.[1]

The agreements between Santa Fe/Oliver and Nomeco/Oliver contemplated that approval might not be forthcoming, and provided that, if consent was not obtained, the Santa Fe and Nomeco interests would be held in trust for the benefit of Oliver. Although Santa Fe and Nomeco would still maintain legal ownership, Oliver would receive the benefits and make all the payments due. Oliver paid cash-calls to Santa Fe and Nomeco and eventually paid directly to the operator of the partnership. Oliver also indirectly participated in partnership matters, as Santa Fe and Nomeco voted pursuant to Oliver's direction. Eventually, Oliver

---

[1]According to Oliver, the other partners consented to the assignment.

could not meet its financial obligations in the agreements with Santa Fe and Nomeco and defaulted. Oliver brought suit.

Oliver sued IFC based on tort and contract law, claiming that IFC's wrongful failure to approve or disapprove the proposed assignments to Oliver prevented Oliver from being able to finance its obligations. The district court entered summary judgment in favor of IFC. It is undisputed that the law of Texas is the applicable law as to all claims brought by Oliver.

## Standard of Review

Appellate courts review summary judgments *de novo,* applying the same standard as the district court. *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 956 (5th Cir.1993). Summary judgment shall be rendered if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986).

## I. Tort Claims

The district court found that Oliver's tort claims[2] accrued no later than March 22, 1991, the date on which Oliver's counsel

---

[2]In the district court, Oliver alleged the following tort causes of action: intentional interference with contract relations; negligent interference with contract relations; negligence and gross negligence; interference with a prospective advantage or opportunity; and interference with lawful business. Oliver's appellate brief addresses only the application of the two-year ban to its intentional interference with contract and prospective business relations claims.

3

warned IFC that its refusal to consent to the assignment "caused prejudice to our clients." Accordingly, since Oliver's claims were not filed until March 25, 1993, the district court held that the Texas two-year statute of limitations barred Oliver's tort action. Oliver disagrees, arguing that Texas law requires actual damage or harm before an intentional interference with contract or prospective business relations claim may be brought. Thus, Oliver claims that its tortious interference claims, which stem from IFC's refusal to consent, did not accrue until November, 1991 when Oliver breached its contracts with Santa Fe and Nomeco.

While Oliver may have suffered additional damages in November, 1991 when it defaulted on the Santa Fe and Nomeco contracts, the statements on March 22, 1991 by Oliver's counsel warning IFC that its refusal to consent to the assignment "caused prejudice to our clients" is conclusive evidence that Oliver had suffered damages at the date of the letter. Hence, we agree with the district court in its determination that the tort causes of action accrued on March 22, 1991 at the latest.[3] Because Oliver filed its action on March

---

[3]Oliver's reliance on *Fury Imports, Inc. v. Shakespeare Co.,* 631 F.2d 1189 (5th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 349 (1981), *Arabian Shield Development Co. v. Hunt,* 808 S.W.2d 577 (Tex.App.—Dallas 1991, writ denied), and *Bauman v. Centex Corp.,* 611 F.2d 1115 (5th Cir.1980), is misplaced. *Fury* applied New York law. *Arabian Shield* focused on the Discovery Rule, which involves situations in which the plaintiff does not even realize that the injury has occurred. *Arabian Shield,* 808 S.W.2d at 583-85. Here, the warning from Oliver's counsel on March 22, 1991 clearly indicates Oliver's knowledge of the injury. Finally, the *Bauman* court held that, in determining the limitations period for the tort of misrepresentation, misrepresentation by itself is not enough to establish harm because it is still possible for the plaintiff to earn a profit after the misrepresentation. *Bauman,* 611 F.2d at

25, 1993, the tort claims are barred by the statute of limitations.[4]

## II. Contract Claims

The magistrate found that Oliver had no action in contract because there was no privity of contract between Oliver and IFC. Oliver presents three theories to overcome the lack of privity.

*1. Waiver and Equitable Estoppel.*—Oliver argues that IFC waived or is equitably estopped from asserting non-consent to the assignments because it engaged in a calculated course of conduct to keep Oliver contributing to the venture while denying Oliver its full rights. According to Oliver, IFC misled Oliver about its reasons for withholding consent—IFC's stated reasons were financial while its true reasons were to block Oliver from control—and thereby led Oliver to make contributions to the venture in the false hope that IFC would eventually be satisfied by Oliver's financial performance and would consent to the assignments. Oliver then argues that such circumstances would allow Oliver to be a party to the JOA who may assert claims for the breach of Article 12.2 and for IFC's breach of the duty of good faith and fair dealing.

---

1119. Thus, the court held that the claim did not accrue until the stock was forfeited, rather than when the misrepresentation was discovered. *Id.* Here, Oliver had clearly suffered harm as of March 22, 1991, when its counsel warned IFC that its denial of consent caused prejudice to Oliver's interests.

[4]Because all the tort claims are barred by the statute of limitations, we do not reach Oliver's claim with respect to the alternate grounds found by the district court to support its summary judgment denying Oliver's tort claims.

It is a well-established principle in Texas that "contract rights cannot be created by estoppel [but estoppel can] prevent a party's conduct and actions from operating as a denial of the right of enforcement of a contractual obligation already created." *Roberts v. California-Western States Life Ins. Co.,* 470 S.W.2d 719, 726 (Tex.Civ.App.—Amarillo 1971) (citation omitted). Because it is conceded that no contract existed between Oliver and IFC, equitable estoppel is inapplicable to this case.[5]

*2. Oliver's Rights as the Wronged Assignee Under Article 12.2 of the JOA.*—Oliver next argues that Oliver may sue IFC for unreasonably withholding consent to the assignments under Article 12.2 of the JOA as the wronged assignee, whether there is privity or not.

The contract law of Texas allows actions by plaintiffs not party to the original contract only if the original parties to the contract intended the contract to benefit the third-party plaintiffs.

---

[5]On appeal, Oliver cites *Knight v. Chicago Corp.,* 183 S.W.2d 666 (Tex.Civ.App.—San Antonio 1944), *aff'd,* 188 S.W.2d 564 (Tex.1945), as invoking the doctrine of waiver and estoppel to validate an assignment of a lease despite a lack of consent. Oliver also cites *Wheeler v. White,* 398 S.W.2d 93 (Tex.1965), which recognized that reliance on promissory estoppel to overcome an otherwise fatal defect of indefiniteness in a contract was not an offensive use of the doctrine.

Oliver, however, has not cited a case contravening the basic principle that estoppel does not affirmatively create contract rights. *Knight* involved a preexisting contract between the parties. *Knight,* 183 S.W.2d at 672. *Wheeler* involved a contract between the parties that was later found defective. *Wheeler,* 398 S.W.2d at 94-96. Further, *Wheeler* concerned the doctrine of promissory estoppel, *id.* at 96, not equitable estoppel.

6

> The intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision.... In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties.

*Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503-04 (Tex.1975) (citation omitted). Article 12.2 of the JOA states that "no Party shall assign all or any part of its Participation Interest under the Contract or this Agreement without the prior approval of all Parties (which approval shall not be arbitrarily, capriciously or otherwise unreasonably withheld)." There is no suggestion anywhere in the language of this provision that third parties, much less Oliver specifically, were intended to be beneficiaries of this provision. The provision was made for the mutual benefits of the parties to the agreement and not Oliver.

Oliver concedes that no Texas court has allowed a putative assignee to bring a claim on a contract against one of the original parties. Nonetheless, Oliver points to *B.M.B. Corp. v. McMahan's Valley Stores,* 869 F.2d 865 (5th Cir.1989), which it contends implies that a putative assignee has such a right. Such an implication is indeed a weak one. Although the *B.M.B.* court did hold that the lessor was obligated to consent to the assignment under a provision requiring consent if reasonable, the court never held that the assignee had standing to bring suit. *B.M.B.,* 869 F.2d at 868-69. Rather, the *B.M.B.* court made such a holding to determine that the plaintiff-lessor had suffered no damages from

7

its tort claim against an actual assignee of the lessee.[6] Moreover, the defendant in *B.M.B.* was not a putative assignee but had stepped into the shoes of the original lessee when the plaintiff acceded to the assignment. In short, *B.M.B.* did not involve the question of a putative assignee's standing to bring suit. Nothing in our reading of *B.M.B.* convinces us that Texas would allow a putative assignee such as Oliver to bring suit on a contract.

Neither are we convinced by *Reynolds v. McCullough,* 739 S.W.2d 424 (Tex.App.—San Antonio 1987, writ denied), which stated in dicta: "A lessor may contract, by provision in the lease, not to unreasonably withhold his consent to an assignment or sublease of the premises. This type of provision is in the nature of a promise or covenant which, if breached, could be grounds for an action for damages." *Id.* The *Reynolds* court did not state that a putative assignee could bring suit on such a provision; in fact, the case which the court cites in support of its statement, *Mitchell's, Inc. v. Nelms,* 454 S.W.2d 809, 813 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.), involved a suit brought by the lessee, not the putative assignee. Further, the *Reynolds* court held that, because the assignees were not "parties to the original lease transaction, they may not seek to enforce the lease." *Reynolds,* 739 S.W.2d at 427.

---

[6]In *B.M.B.,* the lessor sued the assignee claiming misrepresentations were made to obtain its consent to an assignment. The court reasoned that the misrepresentations did not harm the lessor because the lessor was obligated to give consent to the assignee in any event under a provision requiring consent to the assignment if not unreasonable. *B.M.B.,* 869 F.2d at 868-69.

8

Because it does not clearly appear from the contract that provision 12.2 of the JOA was intended to benefit Oliver, Oliver may not sue on the contract.

*3. IFC's Representations Created a Separate Contract.*—Oliver also contends that privity to the JOA was not required, arguing that IFC's representations that it would approve Oliver upon a sufficient financial showing constituted a separate contract to apply financial standards in reasonable fashion, which IFC breached by denying consent even though Oliver met industry standards of financial worthiness. Oliver contends that, here, not only was there substantial reliance to support a promissory estoppel claim, but also Oliver's payments benefitted IFC by preserving an enterprise in which IFC had an interest, thus also providing consideration for a contract.

We reject this claim because Oliver has not demonstrated that IFC made a promise or representation to Oliver. Although IFC may have made representations to Santa Fe and Nomeco, there is no evidence showing that IFC made any to Oliver. Oliver does not contest the factual finding of the district court that

> Plaintiff has provided no evidence that Defendant made a promise to it. As previously discussed, communications concerning the disapproval of the assignments to Plaintiff were made directly between the ... contract parties.... Dr. Oliver Waldron, the Chairman of Plaintiff, Oliver Resources, admits that he "never saw any of the correspondence between [Defendant] and the parties.... Santa Fe made me aware of the fact that [Defendant] was somewhat reluctant." ... In addition, Plaintiff never asked to see copies of correspondence between Defendant and the other ... contract parties.

Likewise, if no promise was made, then certainly no separate offer

9

was made by IFC to Oliver for an independent contract.  We thereby find Oliver's final claim to be meritless.

### III. Leave To Amend

Oliver also complains that the district court erred in denying its motion to amend its pleadings to add a misrepresentation claim. We find this contention to be without merit.  Oliver's motion was filed three months after the deadline set in the Docket Control Order.  The Fifth Circuit has "often ... affirmed denials of motions to amend when the motions have been untimely filed." *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 321 (5th Cir.1991).  Under the circumstances presented here, we find no abuse of discretion in the district court's decision to deny Oliver's motion to amend its pleadings.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.