[No. D003671. Fourth Dist., Div. One. Nov. 26, 1986.]

JOHN HOGAN ENTERPRISES, INC.,
Plaintiff, Cross-defendant and Respondent, v.
WILLIAM CROWE KELLOGG et al.,
Defendants, Cross-complainants and Appellants.

## COUNSEL

Steven B. Davis, John M. Morris and Higgs, Fletcher & Mack for Defendants, Cross-complainants and Appellants.

Robert J. Klitgaard and Klitgaard & Jones for Plaintiff, Cross-defendant and Respondent.

## OPINION

**WORK, Acting P. J.**—Lessor, a family consortium consisting in part of William Crowe Kellogg and Robert R. Jackson, appeal a judgment awarding John Hogan Enterprises, Inc. (Lessee), damages for Lessor's refusal to consent to an assignment of a lease computing rent as a percentage of gross sales, with a stated minimum. Lessor's cross-complaint for damages because of lost rentals due to Lessee's breach of lease terms requiring it to conduct its business during all customary commercial hours was inferentially rendered moot by the Lessee's judgment on its complaint. ██ Because the proposed assignees admitted they would never generate gross sales sufficient to produce rental income equivalent to that consistently being paid by Lessee, we hold Lessor's objections to the proposed assignment were commercially reasonable. We reverse and order judgment entered for Lessor on the complaint and remand for further proceedings on its cross-complaint.

I

On February 27, 1962, Lessor, owner of certain commercial real property in La Jolla, California, entered into a written lease with Lessee. The lease, as renewed in 1972 and as modified and extended in 1978, provided for a minimum monthly rent of $2,750, plus additional payments tied to a formula based on gross sales. Following the gross sales formula, the average monthly rent exceeded $4,200 in 1981, $4,000 in 1982 and $3,700 in 1983. The lease restricted Lessee to operating a women's ready-to-wear shop.[1] The

---

[1] Article V of the lease states: "The premises are leased to LESSEE for the purpose of operating and conducting a women's ready-to-wear shop. LESSEE shall not use or permit said premises, or any part thereof, to be used for any purpose or purposes other than the purpose or purposes for which said premises are hereby leased."

lease was not "contemporary" in that it did not require the tenant to participate in property taxes, insurance or maintenance, nor did it contain escalation clauses reflecting inflationary forces or tax increases.

In November 1983, Lessee notified Lessor it decided to close its La Jolla store even though it was continuing to operate at a profit which had been stable for several years. Although the lease provides the Lessee may not assign the lease or sublet the premises without Lessor's prior written consent or knowledge, on March 28, 1984, Lessee opened a 30-day escrow with Robert and Virginia Phipps to assign them the 9-year remainder of the lease for $150,000.[2] Only after escrow was opened did Lessee attempt to obtain Lessor's consent to the proposed assignment. In later meetings and negotiations Lessor learned the proposed assignees intended to operate an antique store as a hobby and that expected gross sales would never generate rent over the minimum monthly rent of $2,750 when computed according to the formula in the existing lease. In addition, Lessor was never given requested documented financial information or a plan for the assignees' business.

## II

The referee's statement of decision declared Lessor had the right to be informed of assignees' financial status, their business background and experience, as well as their business plans, *including the likelihood they would pay overage rent* before approving the proposed assignment, and to object if assignees did not intend to operate a women's ready-to-wear apparel store. The referee further found Lessee did not make a satisfactory showing in these areas, stating: "On May 9, 1984, based on the information then before them, the landlords would have been justified in refusing consent to assignment." However, the referee also noted that during negotiations, Lessor had expressed concern regarding the fairness of the assignment and whether it should be compensated for consenting to an assignment which would generate less income than had Lessee remained in business. Fixing on this point, without making any finding regarding the effect of the assignment on Lessors' ability to receive equivalent rentals during the remainder of the lease, the referee found Lessor actually withheld consent because assignees rejected a demand the old lease be cancelled and a new lease providing increased rent be substituted. Further, Lessor had demanded part of the consideration or premium assignees paid for the assignment be paid to Lessor rather than Lessee. The referee held Lessor was not justified in withholding

---

[2]The $150,000 is equivalent to the difference over the remaining nine years of the lease between the minimum rent and the actual rents the Lessor had historically received. Mr. Phipps testified he considered the minimum rent of $2,750 and divided the $150,000 by the nine years remaining in the lease.

consent on these bases alone and therefore Lessee's duty to provide the proposed assignees' credit worthiness never arose.

We find as a matter of law on these facts, Lessor was commercially justified in withholding consent from an assignment which would place it in a less beneficial financial position than it bargained for and could expect to continue to receive from Lessee under the percentage lease.

### III

In California, when a lease requires prior consent of the Lessor for assignment, such consent may be withheld only when the lessor has a commercially reasonable objection to the assignment, even absent a provision in the lease stating consent will not be unreasonably withheld. (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 496 [220 Cal.Rptr. 818, 709 P.2d 837].)[3]

*Kendall* makes clear a landlord's personal preferences, taste, inconvenience or desire for higher rents than originally contracted for are not reasonably commercial grounds. *Kendall* states the rule by which we must evaluate Lessor's refusal. The standard is one of reasonableness, conduct of a reasonably prudent person in the landlord's position exercising reasonable commercial responsibility. (*Brigham Young University* v. *Seman* (Mont. 1983) 672 P.2d 15, 18.)

### IV

Generally, a lessor's refusal to consent to a lease assignment for the purpose of charging a higher rent or receiving part of the consideration paid for the lease is an arbitrary reason failing the test of good faith and reasonableness. (See, e.g., *Schweiso* v. *Williams* (1984) 150 Cal.App.3d 883, 886 [198 Cal.Rptr. 238]; *Chanslor-Western O. & D. Co.* v. *Metropolitan San. D.* (1970) 131 Ill.App.2d 527 [266 N.E.2d 405, 408]; *Funk* v. *Funk* (1981) 102 Idaho 521 [633 P.2d 586, 592].) However, we are cited to no decision holding it is not commercially reasonable to reject an assignment which would prevent landlord from receiving at least the same rental income as if the lessee were to continue operation. Here, Lessor did not attempt to extract a higher rent than historically received or than Lessee would have been expected to pay if it fulfilled the lease terms for its remainder.

In *Jones* v. *Andy Griffith Products, Inc.* (1978) 35 N.C.App. 170 [241 S.E.2d 140], the tenant operated a restaurant in the premises and wanted

---

[3]The referee, a retired superior court judge with considerable commercial experience, correctly anticipated the ruling in *Kendall* and applied the general rule it adopted.

to sublet to a person engaged in selling and repairing of electronic equipment. The building had been constructed for restaurant use. The lease contemplated percentage rentals and the trial court found the proposed sublessee's business could not reasonably yield as great a return on plaintiffs' investment as the restaurant operation. Landlord was not compelled to consent to the subtenant.

In *Jack Frost Sales* v. *Harris Trust & Sav. Bank* (1982) 104 IU.App.3d 933 [433 N.E.2d 941], the court explicitly required the tender of a suitable tenant as a condition precedent to the Lessor's duty to accept a sublease or an assignment. "To show that the defendants unreasonably rejected the transfer, plaintiff must prove that the proposed purchaser met reasonable commercial standards. [Citation.]" (*Id.* at p. 950.) "[R]egardless of what might later be shown in court the lessor is justified in refusing his consent until satisfactory proof of financial ability and responsibility is shown. [Citations.]" (*Ibid.*) "Since there was no evidence from which the jury could have determined that the purchasers met reasonable commercial standards there was no case for the jury. [Citation.]" (*Id.,* at p. 951.)

Here, the proposed assignees admitted they did not expect sufficient gross sales to ever generate more than the minimum monthly rent of $2,750 under the lease formula. Therefore, it is undisputed Lessor would receive considerably less rent when its property was converted to a hobby antique store than was consistently produced by the original tenant. Unquestionably, Lessor would suffer substantial financial detriment upon the proposed assignment. On the other hand, Lessee stood to gain at least $1,250 per month above the minimum rent it would be required to pass through to Lessor.

█ When a lessor has reasonable commercial objections to a lease assignment, it does not breach the lease by continuing to negotiate or even requiring a new lease be entered into or that the premium paid lessee for the assignment be paid to lessor, at least up to the amount which lessor could expect from continued operation by the assigning lessee, where lessor would be justified in an outright refusal without further negotiations. In this case, it is unreasonable to require Lessor to accept an unsuitable tenant where the present commercial value of the lease premises is at least $4,000 per month, an amount which Lessor was receiving when Lessee decided to assign and an amount assignees were willing to pay. To force Lessor to accept the minimum $2,750 figure of the original lease while Lessee pockets $1,250 per month for providing an assignee who cannot generate more than $2,750 for Lessor is out of touch with commercial reality. Refusing to consent to highway robbery cannot be deemed commercially unjustified.

## DISPOSITION

The judgment is reversed. The superior court shall enter judgment for Lessor on the complaint, and proceed on Lessor's cross-complaint. Lessor is entitled to attorney's fees on appeal.

Lewis, J., and Riggs, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.