PLAZA ESTEBAN, a general partnership, Plaintiff-Appellee,

v.

La CASA NINO, INC., a Colorado corporation; Donald Goldman, and Max Baer, Defendants-Appellants,

v.

La POMPE deVILLE, INC., a Colorado corporation, Intervenor-Appellant,

v.

Steve Sim ROBERTS, Third-Party Defendant-Appellee.

No. 85CA1149.

Colorado Court of Appeals, Div. II.

Feb. 19, 1987.

Rehearing Denied March 19, 1987.

Certiorari Granted (La Casa Nino) June 22, 1987.

Richard P. Brentlinger, Denver, for appellees, Plaza Esteban and Steve Sim Roberts.

Zerobnick & Sander, P.C., Martin Zerobnick, Richard G. Sander, Gwen J. Young, Denver, for appellants, La Casa Nino, Inc., Donald Goldman, Max Baer and La Pompe deVille, Inc.

BABCOCK, Judge.

Defendants, Donald Goldman and Max Baer, and intervenor, La Pompe deVille, Inc., appeal the trial court's judgment in favor of plaintiff, Plaza Esteban, and its judgment for third-party defendant, Steve Roberts, on their claim for intentional interference with prospective economic advantage. We affirm.

In 1974, plaintiff, as lessor, and defendant La Casa Nino, Inc., as lessee, entered into a ten-year lease of restaurant premises in plaintiff's shopping center. At that time, defendants Goldman and Baer executed a personal guarantee of lessee's obligations under the lease. In 1979, after several unsuccessful attempts at operating restaurants, La Casa Nino obtained plaintiff's permission to substitute intervenor for itself as successor in interest under the lease. Defendants owned both La Casa Nino and intervenor.

Intervenor opened another restaurant, which soon failed. It subsequently initiated bankruptcy proceedings. In June 1982, intervenor, defendants, and plaintiff entered into an assignment and modification of the lease with another party, who opened another restaurant, which also failed. By March 1983, tax notices were posted and the building was locked.

About that time, another party, Ja Jal, Inc., became interested in the property, and its principal approached defendants concerning a sublease. He also approached third-party defendant Roberts, who was plaintiff's managing partner. No further negotiations were pursued until that fall, by which time intervenor and defendants were in default. In November 1983, plaintiff and Ja Jal entered into a 14-year lease of the premises. By a separate agreement, Ja Jal paid plaintiff a $130,000 premium for the right to the lease.

Plaintiff instituted this action after a demand to defendants for past due rent, maintenance fees, utilities, and other expenses received no response. Defendants and intervenor claimed against Roberts, alleging that he had intentionally interfered with a prospective economic advantage by depriving them of the opportunity to sublet to Ja Jal.

The trial court found that intervenor had breached the lease and the assignment by failing to pay rent, maintenance fees, utilities, and adjustments to the rent for insurance and tax assessments. It also found that intervenor had breached the lease by abandoning the premises. It held defendants personally liable as guarantors, and awarded plaintiff damages of $14,591.42, plus attorney fees and costs. The court also entered judgment in favor of third-party defendant.

I.

Defendants and intervenor first contend that the trial court erred in failing to award them a setoff in the amount of the premium received by plaintiff for reletting the premises. We disagree.

Appellants have not provided a transcript of the evidentiary hearing; we must therefore presume that the trial court's findings of fact are supported by the evidence. *See Furer v. Allied Steel Co.*, 174 Colo. 171, 483 P.2d 212 (1971); *White v. Jackson*, 41 Colo.App. 433, 586 P.2d 243 (1978).

■ Because plaintiff's lease to Ja Jal provided for higher rent than its lease to intervenor, the trial court properly allotted

defendants a setoff for the increased rent paid to plaintiff. *See Horacek v. Cherry Creek Corp.*, 28 Colo.App. 258, 472 P.2d 158 (1970). However, as the trial court correctly stated, the right to charge an entry premium is the exclusive right of the party in lawful possession of the premises. Such premium constitutes independent consideration for an option or contract for a new lease, *see generally* M. Friedman, *Friedman on Leases* § 34.1 (1983); *cf. John Hogan Enterprises, Inc. v. Kellogg*, 187 Cal.App.3d 589, 231 Cal.Rptr. 711 (1986), and is thus not rent and therefore may not be applied in mitigation of damages under the prior lease. *See Schneiker v. Gordon*, 732 P.2d 603 (Colo.1987).

■ Because the lease gave plaintiff the right to possession of the premises upon intervenor's breach, abandonment, or insolvency, the premium belonged exclusively to plaintiff. Accordingly, the trial court did not err in refusing to credit defendants with a setoff for the premium.

## II.

Defendants next contend that their liability as guarantors of the lease had been discharged by the modification of the lease without their express consent.

■ In general, when a creditor has chosen to alter materially the principal obligation to the guarantor's detriment, without the guarantor's consent, that alteration discharges the guarantor's liability. *Jackson v. First National Bank*, 28 Colo.App. 415, 474 P.2d 640 (1970). Defendants assert that because rental payments reflected increased tax and insurance costs, the principal obligation of the lease was thereby materially modified without their consent, thus discharging their guaranty. We disagree.

■ The trial court found that because taxes and insurance costs had increased over the years, the parties had adopted a standard practice of adjusting the rent to incorporate these costs. Payment of increased tax and insurance costs was defendants' obligation under the lease. Since no material alteration of the principal obligation occurred, defendants were not discharged from their obligations as guarantors of the lease. *See Jackson v. First National Bank, supra; see also Horacek v. Cherry Creek Corp., supra.* Because the trial court's findings are presumed correct, *see Furer v. Allied Steel Co., supra*, it did not err in holding defendants personally liable as guarantors.

## III.

Finally, defendants and intervenor assert that the trial court erred in entering judgment for third-party defendant on their claim for intentional interference with prospective economic advantage.

■ To prove tortious interference with a prospective economic or business advantage, there must be a showing of intentional and improper interference preventing formation of a contract between complainant and a third party. *Dolton v. Capitol Federal Savings & Loan Ass'n*, 642 P.2d 21 (Colo.App.1981). This interference consists of improperly and intentionally inducing or otherwise causing a third person not to enter into or continue the prospective relation, or of preventing the other from acquiring or continuing the prospective relation. *Wasalco, Inc. v. El Paso County*, 689 P.2d 730 (Colo.App.1984); Restatement (Second) of Torts § 766B.

■ Here, the trial court determined that the claim was unsupported by the evidence. It based its determination on its conclusion that, since defendants had received no firm offer from Ja Jal, there was no prospective contractual or business advantage. It also found that, under the circumstances, third-party defendant had neither interfered with defendant's negotiations nor acted improperly in executing the lease with Ja Jal. Since these findings are presumed to be supported by the evidence, *see Furer v. Allied Steel Co., supra*, the court did not err in entering judgment for third-party defendant.

Because we find that this appeal is not frivolous, we deny plaintiff's request for attorney fees pursuant to C.A.R. 38(d).

Judgment affirmed.

SMITH, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent from that part of the majority opinion which holds that a landlord may avoid the consequences of mitigating damages through the device of charging an entry premium.

The distinction between the charge for entry premium and the charge for periodic rental is one of form and not substance. Carried to a logical conclusion, the majority rule would allow a landlord to allocate the entire consideration for leasing of premises to an "entry premium" and thereby not only avoid the duty to mitigate damages but also to effectuate a double recovery.

The issue in this case is not whether a landlord may charge an entry premium, but, having availed himself of the opportunity to relet the premises, whether the money received must be applied in mitigation of damages. *See Schneiker v. Gordon*, 732 P.2d 603 (Colo.1987).

In *Schneiker*, our supreme court stated: "A party injured by a breach of contract has a duty to make a reasonable effort to reduce the damage sustained.... The measure of damages is the amount it takes to place the landlord in the position he would have occupied had the breach not occurred, taking into account the landlord's duty to mitigate."

The majority contends the entry premium is consideration for the contract for a lease and belonged exclusively to the plaintiff because the defaulted lease gave the plaintiff a right to possession of the premises upon breach. However, the lease here gave the plaintiff the *right and option* to terminate the lease and take possession. The plaintiff did not exercise this option. The court and both counsel agreed the defendants were entitled to a setoff for increased rent received by the plaintiff.

When a landlord relets premises he must account to the tenant for an amount in excess of the original lease when he acts for the tenant's account. Restatement (Second) of Property § 12.1 comment i (1977). Reletting on the tenant's account is

deemed a sublease by the original tenant, and his leasehold continues. Restatement (Second) of Property, *supra*. In such a case, the landlord takes possession only to the extent necessary to protect the property from vandalism and to relet, and does not have a right to full possession. Restatement (Second) of Property, *supra*.

Here, the right of lawful possession to enter and use the premises belonged to the defendants until the premises were relet. In fact, the principal owner of Ja Jal, Inc. first approached the intervenors regarding rental of the premises and the intervenors referred him to the plaintiff. Furthermore, it is inconsistent to find on one hand the defendants were entitled to the setoff for increased rent and on the other hand determine they have an insufficient possessory interest to entitle them to a setoff for the premium.

In *Schneiker*, our supreme court adopted the reasoning of Professor Dobbs, D. Dobbs, *Remedies* (1973), concerning the concept of avoidable consequences and states the reason for the avoidable consequences rule is that damages should be minimized so that economic waste will be avoided. He reasons that application of this concept would have the effect of barring recovery of damages that should have been avoided, thus eliminating any recovery that is economically wasteful. I would apply this principle here and would find that the landlord has suffered no injury.

Therefore, I would find the trial court committed reversible error in denying the defendants a setoff for the premium.