44 F.3d 1497
 31 Fed.R.Serv.3d 1092
 Henry KLEIN, (Realigned as Plaintiff); Gur Shomron, Amiram
Grynberg, Defendisk Limited, an Israeli
corporation, Plaintiffs/Appellants
v.
Jack J. GRYNBERG, (Realigned as Defendant); Defendisk,
Inc., a Colorado corporation (Realigned as
Defendant); Grynberg Petroleum Company,
a Colorado corporation,
Defendants/Appellees.
 Nos. 92-1232, 92-1233.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 19, 1995.
Rehearing Denied Feb. 16, 1995.
 
 1
 Patrick D. Vellone, Vinton, Waller, Slivka & Panasci, Denver, CO, for plaintiffs-appellants, Gur Shomron, Amiram Grynberg and Defendisk, Ltd.; and Daniel Crupain, Crupain & Greenfield, New York City, for plaintiff/appellant, Henry Klein.
 
 
 2
 Donald W. Alperstein, Alperstein & Covell, P.C., Denver CO, for defendants/appellees, Jack Grynberg and Grynberg Petroleum Co.
 
 
 3
 Before KELLY and McKAY, and ROSZKOWSKI,* Senior District Judge.
 
 
 4
 ROSZKOWSKI, Senior District Judge.
 
 
 5
 This is an appeal from a judgment notwithstanding the verdict entered by the District Court of Colorado. The suit arose out of a contract between the parties to develop and market a computer software security system invented by the plaintiffs. Following a jury trial in which the plaintiffs essentially prevailed, the District Court struck much of the award and entered judgment as a matter of law for defendants. For the reasons that follow, we affirm that judgment in part and reverse in part.
 
 Background
 
 6
 The story of this litigation begins over ten years ago when plaintiffs-appellants Ami Grynberg, Henry Klein and Gur Shomron invented a means of protecting computer software against unauthorized copying and piracy. In 1983, they obtained patents in the United States and Israel, and formed Defendisk Limited, an Israeli corporation, to develop and market the Defendisk system.
 
 
 7
 Hoping to market the product in the United States, the plaintiffs sought financing from defendant Jack Grynberg, a sophisticated international businessman and the uncle of Ami Grynberg. In December of 1983, the parties entered into a written agreement ("the December agreement") which provided for the formation of Defendisk, Inc., a corporation devoted to researching, developing and marketing the Defendisk system. Under the agreement, plaintiffs would contribute the technology and Jack Grynberg would finance the corporation. Defendant agreed to provide up to $350,000 to cover all costs and development, to obtain a $350,000 bank line of credit, and to make payments at a rate of $39,000 per month. Pursuant to the agreement, 50 percent of the new corporation would be owned by Jack Grynberg and 50 percent by plaintiffs.
 
 
 8
 On December 10, 1983, Jack Grynberg incorporated Defendisk, Inc., and appointed himself and two employees of Grynberg Petroleum as officers and directors. To start operations, plaintiffs provided confidential and trade secret information and technical support to defendants. Defendisk, Inc., enjoyed early success, entering into contracts for the sale of the Defendisk system to software manufacturers for over $500,000 in revenue, but relations between the parties soon deteriorated and the business quickly fell apart. Among other things, no shareholders agreement was ever drafted, no shares of Defendisk, Inc., were ever issued to plaintiffs, and defendant never obtained a bank line of credit.
 
 
 9
 The parties disagree on the cause of the breakdown. Plaintiffs allege that Jack Grynberg engaged in a deliberate campaign of abusive treatment, sabotage and deceit in order to divide the plaintiffs and seize the corporation and the benefits of the Defendisk system for himself. Defendants dispute the facts as presented by plaintiffs in several respects. There is testimony in the record to support both plaintiffs' and defendants' version of the events. However, judging by the verdict, the jury accepted plaintiffs' account. Defendants do not dispute the factual finding of the jury that a breach of contract and a breach of fiduciary duty did occur, and the District Court did not overturn those findings. In addition, when reviewing a judgment notwithstanding the verdict, we must view the evidence in the light most favorable to the party which prevailed at trial. For these reasons, we set forth plaintiffs' version of the facts.
 
 
 10
 Following the December agreement, plaintiff Henry Klein traveled to this country to provide assistance with the start-up venture. Klein was a man of 34 years whose entire life had been focused on mathematics and computer technology. He was naive and unsophisticated with respect to the business world, and he was nervous about being in an unfamiliar foreign country.
 
 
 11
 Shortly after his arrival in Denver, Jack Grynberg began a campaign of abusive treatment towards Klein, ostensibly to create a division between him and the other plaintiffs. Defendant told Klein, Shomron and Ami Grynberg conflicting stories, thereby creating confusion, resentment and dissension among the plaintiffs. For instance, defendant told Klein that he was being cheated by his partners and encouraged him to seek a higher percentage of shares than the others, while at the same time, he told Gur Shomron and Ami Grynberg that Klein was creating problems by asking for a higher percentage of shares. Defendant also urged Klein to sue his partners and to place a lien on their interests. Jack Grynberg's outrageous behavior so affected Klein that he was unable to eat or sleep, and he desired to return to Israel. To prevent him from leaving, defendant threatened him with a phony lawsuit for over $40,000,000.
 
 
 12
 In the following months, defendant falsely represented that he had issued stock in the United States company, and then persuaded Gur Shomron and Ami Grynberg to provide all the confidential information and technical support necessary to allow defendants to produce the Defendisk system without plaintiffs. Jack Grynberg also feigned interest in, but never followed through on, finalizing a shareholder agreement with plaintiffs, fully funding the venture, and placing plaintiffs on the Board of Directors of the company.
 
 
 13
 At the same time, Jack Grynberg continued to harass Klein and to drive a wedge between him and his partners, Ami Grynberg and Gur Shomron. Plaintiffs allege that defendant: (1) threatened Klein with criminal prosecution; (2) convinced Shomron and Ami Grynberg to join in a lawsuit against Klein for his alleged impairment of the Defendisk System; (3) threatened to sue Klein's attorneys personally; (4) misrepresented to Klein that he and his nephew Ami Grynberg had a secret agreement to vote their shares together, which would allow them to control the company; (5) misrepresented to Ami Grynberg and Gur Shomron that Klein was demanding a greater percentage of the stock; and (6) accused Klein of stealing the Defendisk system from an Israeli professor.
 
 
 14
 By the end of June of 1984, Jack Grynberg had secured complete control over all of the proprietary and confidential information concerning the Defendisk system. He drove the company's president out and assumed all managerial control. He refused to execute a shareholder agreement, to issue shares of stock to plaintiffs, or to allow plaintiffs a say in the operation of the company. He refused to fund development, marketing, or production of the Defendisk system, or to provide a line of credit to enable Defendisk, Inc., to begin full scale production. He would not allow Defendisk, Inc., to operate independently of Grynberg Petroleum Company. He excluded the plaintiffs from any involvement in Defendisk, Inc., and instructed his employees not to allow them on the business premises. Thereafter, Jack Grynberg sought to obtain an independent patent on the Defendisk system.
 
 
 15
 Plaintiffs allege that by excluding them from Defendisk, Inc., defendant kept the company from adapting to a rapidly changing technological environment. Ultimately, Jack Grynberg's actions prevented plaintiffs from utilizing the window of opportunity to successfully market their invention.
 
 
 16
 In addition to the foregoing, plaintiff Ami Grynberg alleges that defendant interfered with his prospective business relations in connection with another security device that he invented, the Personal Electronic Access Key ("PEAK"). After the December agreement, Jack Grynberg introduced Ami Grynberg to potential investors who requested the business plan for the PEAK product. Ami Grynberg then scheduled meetings with the investors, but the meetings never took place. Plaintiff alleges that the investors refused to meet with him because of a written request made by Jack Grynberg that they refrain from doing so. In addition, Ami Grynberg alleges that Jack Grynberg claimed to have a "grub stake" in the PEAK product, which prevented him from securing alternate financing.
 
 Procedural History
 
 17
 In December of 1984, plaintiffs filed suit in the District Court of Colorado alleging breach of contract, breach of fiduciary duty, fraud, misappropriation of trade secrets, and conversion regarding the Defendisk system and Defendisk, Inc. Plaintiff Ami Grynberg also brought a claim for tortious interference with prospective business advantage regarding the PEAK device. Defendants asserted counterclaims similar to those claims brought by plaintiffs, as well as a claim for unjust enrichment relating to the PEAK device.
 
 
 18
 The case was finally brought to trial in February of 1992. After six weeks of testimony, the jury awarded Ami Grynberg $166,000, Gur Shomron $166,000, Henry Klein $186,000, and Defendisk, Limited, $1.00 on the breach of contract claim. They awarded each plaintiff $1.00 in actual damages on the breach of fiduciary duty claim, and $1,000,000 each to Ami Grynberg, Gur Shomron and Henry Klein in exemplary damages. They awarded Ami Grynberg $200,000 in actual damages and $350,000 in exemplary damages on the tortious interference with prospective business advantage claim. The jury found in favor of defendants on the remainder of plaintiffs' claims. The jury also found in favor of defendants on the counterclaim for unjust enrichment and awarded $10,000 in damages. Judgment reflecting the jury's verdict was entered on March 31, 1992.
 
 
 19
 On June 24, 1992, the District Court held a hearing on post-trial motions. At that time, the court entered judgment as a matter of law striking the exemplary damage awards for breach of fiduciary duty. The court also entered judgment as a matter of law for defendants on the claim for tortious interference with prospective business advantage. Finally, the court denied plaintiffs' Motion for Assessment of Costs, directing that each party cover its own costs of litigation.
 
 
 20
 Thereafter, plaintiffs sought to collect on the breach of contract, but in order to do so were required by the District Court to accept the $4.00 in actual damages awarded on the breach of fiduciary duty claim. They accepted the $4.00 under protest and thereafter filed a timely appeal.
 
 
 21
 Plaintiffs raise several issues on appeal: (1) that the District Court erred in entering judgment notwithstanding the verdict striking the jury award of punitive damages for breach of fiduciary duty; (2) that the District Court erred in barring the plaintiffs from offering certain evidence of lost profits with regards to the claim for breach of fiduciary duty; (3) that the District Court erred by entering judgment notwithstanding the verdict for defendant on the claim for tortious interference with prospective business advantage; and (4) that the District Court erred by failing to award costs to plaintiffs as the prevailing parties.[1]
 
 Waiver of Right to Appeal
 
 22
 Defendants first argue that plaintiffs have waived their right to appeal by accepting payment of the total judgment entered by the District Court for $518,005.[2] They contend that acceptance of the $4.00 awarded for breach of fiduciary duty is a satisfaction of that claim from which an appeal cannot be taken, and that plaintiffs cannot accept the benefits of a judgment while at the same time working to overturn that judgment.
 
 
 23
 Defendants' argument is in error. Acceptance of payment of an unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction precluding appeal. United States v. Hougham, 364 U.S. 310, 312, 81 S.Ct. 13, 15-16, 5 L.Ed.2d 8 (1960). In order to act as a waiver of appeal, a party's acceptance must be voluntary and intended as satisfaction of the judgment. H & S Industries, 525 F.2d at 765; Fidelcor Mortgage Corp. v. Insurance Co. of North America, 820 F.2d 367, 370 (11th Cir.1987). "It is 'the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties' which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted." Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 752 (9th Cir.1969) (citing Gasden v. Fripp, 330 F.2d 545, 548 (4th Cir.1964)).
 
 
 24
 Plaintiffs did not voluntarily accept the $4.00 award for breach of fiduciary duty. In order to collect on the breach of contract claim, they were compelled by the District Court to collect on the breach of fiduciary duty claim, and they did so only under protest. Such an acceptance was not voluntary. Neither was it intended by the plaintiffs to satisfy the judgment and bring the litigation to a conclusion. In this instance, plaintiffs' acceptance did not act as a waiver of their right to appeal.
 
 Punitive Damages
 
 25
 The jury found that defendants breached the fiduciary duty owed plaintiffs and awarded them $1.00 each in actual damages. The District Court entered judgment on the actual damage award and defendants did not cross-appeal contesting its validity.[3] Therefore, we accept that defendant was in fact a fiduciary and that he breached his duty. The only issues before us are whether the evidence supported an award of punitive damages for that breach, and if so, whether the amount awarded by the jury was excessive.
 
 
 26
 We review de novo the granting of a motion for judgment notwithstanding the verdict, applying the same standard as the trial court should when deciding the motion. Meyers v. Ideal Basic Industries, Inc., 940 F.2d 1379, 1383 (10th Cir.1991). Under this standard, the court must view all of the evidence in the light most favorable to the nonmoving party, and then determine whether there is evidence upon which the jury could have properly relied in returning a verdict for the nonmoving party. Id. The court may not reweigh the evidence or substitute its judgment for the jury's. Tennant v. Peoria & Pekin Union Railroad, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). If there is evidence upon which the jury could have properly relied in reaching its verdict, that verdict must stand.
 
 
 27
 In a diversity case, whether punitive damages are warranted is a matter of state law.[4] The Post Office v. Portec, Inc., 913 F.2d 802, 809 (10th Cir.1990), vacated, 499 U.S. 915, 111 S.Ct. 1299, 113 L.Ed.2d 235 (1991). Under Colorado law, to be entitled to punitive damages in a tort claim, a plaintiff must prove beyond a reasonable doubt that the injury complained of was attended by circumstances of fraud, malice or wanton disregard of the rights and feelings of the plaintiff. Sec. 13-21-102, 6 C.R.S. (1973); Sec. 13-25-127(2), 6 C.R.S. (1973); Tri-Aspen Construction Co. v. Johnson, 714 P.2d 484, 486 (Colo.1986) (en banc).
 
 
 28
 At trial, plaintiffs presented testimony and other evidence to support their version of events, as described more fully above. The record is replete with evidence of defendants' reprehensible conduct. Most significantly, Henry Klein testified to the abuse he suffered at the hands of Jack Grynberg. In his own testimony, defendant agreed with the general course of events, but denied specific incidents as recounted by plaintiffs and their witnesses.
 
 
 29
 Thus, the jury was presented with conflicting testimony regarding certain events and the motivations behind defendant's actions. In such a case, it is the jury's prerogative to weigh the credibility of the witnesses and determine should be believed. The Supreme Court in Tennant v. Peoria & Pekin Union Railroad described the jury's function this way: "It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select among conflicting inferences and conclusions that which it considers most reasonable.... That conclusion ... cannot be ignored." 321 U.S. at 35, 64 S.Ct. at 412 (citations omitted).
 
 
 30
 The District Court entered judgment as a matter of law striking the exemplary damage award because it believed that the defendant's conduct was not as egregious as some defendants' conduct in cases where large punitive damage awards were allowed. The court thought that defendant's acts were "not completely egregious in nature," but it is not the court's prerogative to substitute its opinion of what constitutes egregious behavior for that of the jury.
 
 
 31
 Because there was testimony and other evidence to support the plaintiffs' contentions and the jury was properly instructed on the reasonable doubt standard for exemplary damages,[5] we find no reason to believe that the jury was incorrect in its determination that punitive damages were warranted. The presence of conflicting testimony need not prevent a jury from deciding that one side has proven the existence of facts beyond a reasonable doubt. There was ample evidence, if believed to be true, that was properly relied upon by the jury and could support a punitive award beyond a reasonable doubt.
 
 
 32
 In some instances, however, there may be evidence in the record to support a punitive award, but the figure arrived at by the jury is unreasonable. When a court concludes that there was error only in the excessive damage award, but no error tainting the finding of liability, it may order a remittitur or grant a new trial if the plaintiff refuses to accept the remittitur. Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 703 F.2d 1152, 1168 (10th Cir.1981), cert. denied, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983).
 
 
 33
 There is no bright line between an acceptable and an unacceptable award of punitive damages. TXO Production Corp. v. Alliance Resources Group, --- U.S. ----, ----, 113 S.Ct. 2711, 2720, 125 L.Ed.2d 366 (1993); Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991). Instead, the standard is one of reasonableness. This court in Malandris delineated that standard as "whether the punitive damage award was so excessive that is shocks the judicial conscience or leads to the inescapable inference that it resulted from improper passion or prejudice on the part of the jury." Malandris, 703 F.2d at 1177. See also TXO, --- U.S. at ----, ----, 113 S.Ct. at 2714, 2725.
 
 
 34
 The defendants contend that a 1,000,000 to 1 ratio of exemplary to actual damages is impermissible. Certainly, high ratios deserve "close judicial scrutiny." Post Office, 913 F.2d at 811. However, this court has never held that any ratio is per se excessive. Rather, the ratio "is merely one factor to consider in reviewing the excessiveness of an award." Id. at 810.
 
 
 35
 Although there is a great disparity between the actual damages and the exemplary award in this case, nominal actual damages can sustain an exemplary damage award. See, e.g., Bradbury v. Phillips Petroleum Co., 815 F.2d 1356 (10th Cir.1987) (50,000:1 ratio of punitive to actual damages upheld). Moreover, the Supreme Court recently held that the dramatic disparity between actual damages and a punitive award is not controlling. TXO, --- U.S. at ----, 113 S.Ct. at 2713. Instead, a court must also consider other factors, such as (1) the magnitude of the potential harm to the intended victims, (2) the possible harm to other victims if similar future behavior is not deterred, (3) the financial gains that the defendant hoped to achieve through his scheme, (4) whether the scheme was a part of a larger pattern of fraud and trickery, (5) the bad faith of the defendant, and (6) the petitioner's wealth. Id. at ---- - ----, 113 S.Ct. at 2721-22.
 
 
 36
 Colorado courts have outlined four factors to consider when determining whether a punitive award is reasonable: (1) the nature of the act which caused the injury; (2) the economic status of the defendant; (3) the deterrent effect of the award on others; and (4) the relation to the compensatory award. Malandris, 703 F.2d at 1177.
 
 
 37
 The jury in this case believed that the defendant acted maliciously. The amount of money potentially at stake in this venture was substantial. Through his scheme, defendant hoped to reap sizable financial gains by fraudulently securing the Defendisk system for himself. Defendant argues that he did not realize financial benefit from any wrongs to the plaintiffs. This ignores the fact that he apparently intended to, but his own actions prevented the company from becoming profitable. Furthermore, the jury could have concluded that defendant must be deterred from committing similar acts to future business associates. Finally, the defendant is apparently a wealthy man, and the jury could have determined that a sizable award was necessary to punish and deter him.
 
 
 38
 The jury was properly instructed regarding the burden of proof, and there was sufficient evidence in the record to support its finding that exemplary damages were warranted. The trial court, however, was "shocked" by the sheer size of the verdict. The defendant's conduct was indeed deplorable, but the jury assessed the actual damages at only $4.00. Certainly, considering the nature of the conduct involved, a sizable exemplary award was warranted, but the $3,000,000 figure seems excessive. Under these circumstances, we think it proper that a remittitur be granted by the trial court, who is in the best position to make a just determination. Moreover, there is inadequate evidence in the record to determine defendant's ability to pay, and the District Court can hold a hearing to ascertain defendant's current economic status. If the plaintiffs do not accept the reduction, a new trial should be granted on this issue.
 
 Lost Profit Evidence
 
 39
 Plaintiffs contend that the District Court erred by precluding them from offering certain expert testimony from Lester Thompson regarding lost profits on their claim for breach of fiduciary duty. Rulings limiting testimony are reviewed for abuse of discretion and are reversible only after a showing of prejudice to substantial rights or manifest injustice.[6] Fed.R.Evid. 103(a)(1); Polys, 941 F.2d at 1407; Marsee v. United States Tobacco Co., 866 F.2d 319, 323 (10th Cir.1989). Here, the jury awarded breach of contract damages and breach of fiduciary damages in an amount smaller than admitted evidence would have supported, which suggests that plaintiffs were not prejudiced by the exclusion of this evidence. Plaintiffs have failed to show prejudice, and, therefore, we affirm the District Court's ruling.
 
 
 40
 Tortious Interference With Prospective Business Advantage
 
 
 41
 In 1983, plaintiff Ami Grynberg developed, in addition to the Defendisk System, a security device for computer hardware known as the Personal Electronic Access Key ("PEAK"). He alleges that Jack Grynberg undertook an intentional course of conduct to interfere with the formation of a contract between him and third parties for the financing of the PEAK system. The jury awarded Ami Grynberg $200,000 in actual damages and $350,000 in punitive damages for tortious interference with prospective business advantage, but the District Court entered judgment as a matter of law for defendants, finding the claim "so speculative it's scary."
 
 
 42
 Again, we review de novo a judgment notwithstanding the verdict, applying the same standard that the District Court should apply: Is there evidence in the record upon which the jury could have properly relied in returning a verdict for the nonmoving party? Meyers v. Ideal Basic Industries, Inc., 940 F.2d 1379, 1383 (10th Cir.1991). A verdict is proper only if supported by more than a scintilla of evidence. Id. When, as here, jurisdiction is based upon diversity, we also review de novo the District Court's interpretation of the substantive state law. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220-21, 113 L.Ed.2d 190 (1991).
 
 
 43
 To establish a claim for tortious interference with prospective business relations, a plaintiff must show intentional and improper interference preventing the formation of a contract. Behunin v. Dow Chemical Company, 650 F.Supp. 1387, 1392-93 (D.Colo.1986); Dolton v. Capital Federal Savings and Loan Association, 642 P.2d 21, 23 (Colo.Ct.App.1981). The defendant can interfere either by inducing or causing a third party not to enter into or continue relations, or by preventing the plaintiff from acquiring or continuing the relations. Behunin, 650 F.Supp. at 1393. It is not necessary to prove an underlying contract. Wasalco, Inc. v. El Paso County, 689 P.2d 730, 732 (Colo.Ct.App.1984). However, a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope. Tose v. First Pennsylvania Bank, N.A., 648 F.2d 879, 898 (3rd Cir.1981); Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 471 (1979); cf. Plaza Esteban v. La Casa Nino, Inc., 738 P.2d 410, 412 (Colo.Ct.App.1987) (requiring a "firm offer"), rev'd on other grounds, 762 P.2d 669 (Colo.1988).
 
 
 44
 The court below held that in this case the prospective benefits were too speculative to support an award for tortious interference with prospective business advantage; that plaintiff had a "mere hope" of a prospective relationship. We agree. Plaintiff had no ongoing relationship with any of the investors. Cf. Behunin, 650 F.Supp. at 1393; Plaza Esteban, 738 P.2d at 412. Indeed, he had only one meeting with each. Plaintiff offered no evidence that any of the prospective investors had the intent to finance his invention; there is no evidence of what the investors thought of the project. The evidence does not support a finding that Ami Grynberg enjoyed a reasonable probability of receiving any economic benefits from these investors.
 
 
 45
 Plaintiff failed to make a prima facie case for tortious interference with prospective business advantage because there was no evidence establishing a reasonable probability that he would have received economic benefits from these investors. Thus, we affirm the District Court's judgment notwithstanding the verdict on plaintiffs' claim for tortious interference with prospective business advantage.
 
 Costs
 
 46
 Federal Rule of Civil Procedure 54(d) authorizes an award of costs to prevailing parties. The Rule states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). This court has held that Rule 54(d) creates a presumption that the prevailing party shall recover costs. True Temper Corp. v. CF & I Steel Corp., 601 F.2d 495, 509-10 (10th Cir.1979). A district court's denial of costs is reviewed for an abuse of discretion. Id.
 
 
 47
 The court below denied plaintiffs' Motion for Assessment of Costs, finding that the litigation was complex, "close" and protracted, and that the delay was neither party's fault. The court also noted that the plaintiffs did not prevail on all of their claims. For these reasons, the court directed that each party bear its own costs.
 
 
 48
 Plaintiffs were awarded over $500,000 on their breach of contract claim. In addition, pursuant to our holding, they are entitled to punitive damages on their breach of fiduciary duty claim. Plaintiffs prevailed on the major issues in this case. To deny them costs would be in the nature of a severe penalty imposed upon them, and there must be some apparent reason to penalize the prevailing party if costs are to be denied. Serna v. Manzano, 616 F.2d 1165, 1167 (10th Cir.1980); True Temper Corp., 601 F.2d at 509. We find no justification to penalize plaintiffs because this litigation was complex or lengthy. Defendants' own actions brought about the litigation. Accordingly, we hold that the District Court's denial of costs to the plaintiffs was an abuse of discretion.
 
 Conclusion
 
 49
 For the reasons stated, the District Court's judgment is affirmed in part and reversed in part. The cause is remanded to the District Court with directions that it reinstate that part of the jury verdict awarding exemplary damages for breach of fiduciary duty and then grant an appropriate remittitur; the District Court should also make an appropriate assessment of costs against defendants. In so ordering, we emphasize this court's view that the plaintiffs are entitled to significant punitive damages. If plaintiffs accept the reduction of the exemplary award, then judgment as so modified shall be final; otherwise, an order shall be entered granting a new trial.
 
 
 
 *
 The Honorable Stanley J. Roszkowski, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 Along with their brief, Defendants filed a Motion to Strike from Appellants' Appendix Items not in the Record. The objections to Appellants Proposed Exhibit 133 and Proposed Exhibit 152 which pertain to the PEAK device need not be decided because of this court's holding on that claim, Appellants' Exhibit 70 (tax return of Jack Grynberg) is properly included in the briefs because a reviewing court may undertake a post-trial determination of the Defendant's economic status for purposes of reviewing a punitive award (See Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 22, 111 S.Ct. 1032, 1045-46, 113 L.Ed.2d 1 (1991)); and Defendants' opposition to portions of the Vener Deposition is moot because Plaintiffs have no objection to striking those portions of the deposition. Defendants also filed a Motion to Include Certain Items Within Supplemental Appendix. We admit these items based on 10th Circuit Rule 10.3.3
 
 
 [2]
 In a diversity case, the appealability of a judgment is governed by federal law. United States ex rel. H & S Industries, Inc. v. F.D. Rich Co., 525 F.2d 760, 764 (7th Cir.1975)
 
 
 [3]
 Defendants do not contest the entry of judgment for Plaintiffs on the breach of fiduciary duty claim. However, they raise this issue as an alternate reason for upholding the District Court's decision to vacate the punitive awards. Relying on Isler v. Texas Oil & Gas Corp., 749 F.2d 22 (10th Cir.1984), Defendants contend that the breach of fiduciary duty claim should not have been submitted to the jury because it was subsumed in the contract claim. They argue that since punitive damages are not recoverable in a contract claim, Plaintiffs are not entitled to punitive damages on the tort claim. However, Colorado law is quite clear that if the breach of contract would also constitute an independent tort, punitive damages are recoverable. Mortgage Finance, Inc. v. Podleski, 742 P.2d 900, 903-04 (Colo.1987); see also, Colorado Interstate Gas Company, Inc. v. Chemco, Inc., 833 P.2d 786, 792 (Colo.Ct.App.1991). We see no difference where, as here, the tort claim is raised separately. Furthermore, the tort sued on in Isler was negligence. 749 F.2d at 23. In Isler, the court saw the negligence claim as nothing more than an attempt to circumvent the operation of the Commercial Code and rewrite the contract. Id. That is not the case here where the Plaintiffs could have sought punitive damages on the contract claim based upon Podleski. Isler itself recognized the exceptions to its ruling, such as fraud and unconscionability. Id. The intentional tort of breach of fiduciary duty alleged in this case is closer to those exceptions
 
 
 [4]
 Jurisdiction in this case is based upon diversity. Therefore, this court must follow Colorado law in determining the substantive issues of law presented in this appeal. Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [5]
 The jury was given Jury Instruction No. 83 which reads as follows:
 If you find in favor of the Plaintiffs, Gur Shomron, Amiram Grynberg, and Henry Klein, and award them actual damages for their claims of breach of fiduciary duty, then you shall consider whether exemplary damages should be assessed against the Defendants. If you find beyond a reasonable doubt that the injury complained of was attended by circumstances of fraud, malice, or wanton and reckless disregard of the rights and feelings of the Plaintiffs, then in addition to actual damages, you may also assess a reasonable sum as exemplary damages.
 Exemplary damages, if assessed, are to be assessed as punishment of the Defendants, and as an example to others.
 We note that the instruction used appears to be substantially the same as that given in Post Office. See 913 F.2d at 808.
 
 
 [6]
 Defendants contend that Plaintiffs failed to make an offer of proof at trial regarding Mr. Thompson's testimony, and therefore this court can only reverse if "there was plain error affecting a party's substantial rights." Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1408 (10th Cir.1991). Under either standard, we find no prejudice to Plaintiffs