**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JONATHAN DIPERNA,

        Plaintiff-Appellee/
        Cross-Appellant,

v.

ICON HEALTH AND FITNESS,
INC., a Utah corporation;
FREEMOTION FITNESS, a Utah
corporation,

        Defendants,

------------------------------

NORMAN YATOOMA &
ASSOCIATES, P.C.,

        Interested Party -
        Appellant/Cross-Appellee.

Nos. 11-4093 and 11-4104
(D.C. No. 1:07-CV-00136-BSJ)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The parties are painfully familiar with the twists and turns of this lengthy litigation, so we will cut to the chase. This is a fee dispute. Norman Yatooma & Associates, P.C. (NYA) wants fees from a settlement its former client, Jonathan Diperna, achieved using new lawyers after NYA withdrew from his case. Mr. Diperna and his new lawyers (who will have to share their fee if NYA receives anything) say NYA deserves nothing. For its part, the district court granted NYA $45,000, a paltry sum in NYA's view and far too much in Mr. Diperna's.

Before we can get to the merits, though, Mr. Diperna says we should dismiss this appeal. We should, in his view, because after the district court issued its judgment he sent NYA a check for the full amount together with a letter saying the check was tendered "in full settlement." NYA deposited the check, though admittedly into a separate trust account and all the while reaffirming its intent to appeal. All the same, Mr. Diperna insists, NYA took the money and that's enough to preclude NYA's appeal if we apply Michigan state law to this diversity suit.

In reply, NYA relies almost entirely on *Klein v. Grynberg*, 44 F.3d 1497 (10th Cir. 1995). *Klein* holds that "[i]n a diversity case, the appealability of a judgment is governed by federal law." *Id.* at 1502 n.2. *Klein* then proceeds to add that, under federal law, the "[a]cceptance of payment of an unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction precluding an appeal." *Id.* at 1502. Instead, *Klein* teaches, "[i]t is the mutual

manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal." *Id.* (internal quotation marks omitted). And NYA insists any such mutual manifestation is lacking in this case because even as it accepted the $45,000 check it made plain its belief that the amount was inadequate.

In the teeth of all this, Mr. Diperna fails to address *Klein*'s holdings or its application to his case. In fact, he does not even cite *Klein* in his submissions to this court, though it is obviously relevant and heavily relied on by his opponent. Instead, Mr. Diperna seeks to direct our attention elsewhere.

First, he points us to *Evans v. Stearns-Roger Manufacturing Company*, 253 F.2d 383, 385 (10th Cir. 1958). But that case never purported to address — one way or the other — whether federal or state legal principles of accord and satisfaction govern the appealability of diversity cases like this one, let alone what the content of a federal rule might be. *Evans*, thus, simply bears no relevance to the question we face today. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 118 (1993) (noting "longstanding rule" that prior decisions not squarely addressing the issue at hand may not be taken "as a binding precedent on th[e] point") (quotation omitted) (alteration in original).

Second and somewhat more promisingly, Mr. Diperna turns our attention to *Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates*, 3 F. App'x 838 (10th Cir. 2001). *Valley Asphalt* is a post-*Klein* decision suggesting that, even under federal

law, mutual intent to end the litigation often can and should be inferred from the acceptance of a check tendered "in full settlement." *See id.* at 840. According to *Valley Asphalt*, the "retention of a check offered as payment in full constitutes assent to the accord and satisfaction even if the recipient of the check notifies the sender it is accepted only as partial payment." *Id.* This opinion, however, is unpublished. And while it might be entirely correct and capable of being harmonized with *Klein*, it does not discuss *Klein*'s holding and Mr. Diperna himself makes no effort of his own to stitch the two holdings together or offer a way to distinguish one from the other.

This is fatal to his motion to dismiss. By failing to mention, let alone analyze, our controlling precedent in *Klein*, Mr. Diperna has surely waived any possible prevailing argument through or around it that he might have. This is not to say such an argument does not exist. By way of example, *Klein* tells us to look for a "mutual manifestation of intent" to settle. And it might be the case that, at least sometimes, the act of accepting payment is itself sufficient to manifest an intent to settle even when the plaintiff claims to reserve his appellate rights, just as *Valley Asphalt* suggests. Indeed, this line of thought has a long pedigree in the common law and it's unclear whether *Klein* meant to displace it entirely. *Id;* 13 Sarah H. Jenkins, Corbin on Contracts § 70.2(3) (rev. ed. 2003). Still, whether and how *Klein* and *Valley Asphalt* might marry in this way or some other are questions for another day because Mr. Diperna makes no effort to address them

- 4 -

today.  For now, we need only say something simpler:  that it is not the job of the court to identify for a litigant controlling circuit precedent and pilot for him a path through its shoals; a litigant's failure to take up that task for itself is enough to end the inquiry.  *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (insufficiently developed issues are deemed waived).

But to say we will hear this appeal is not to say we can decide it.  Mr. Diperna complains the $45,000 the district court awarded is too high.  NYA complains it is too low.  Our problem is we cannot tell.

Of course, we approach a district court's award of attorney's fees deferentially, and will reverse only if we discern an "abuse of discretion." *Browder v. City of Moab*, 427 F.3d 717, 719 (10th Cir. 2005).  And to find an abuse of discretion we must find the district court's decision falls "beyond the bounds of rationally available choices [before the district court] given the facts and the applicable law in the case at hand." *Madron v. Astrue*, 646 F.3d 1255, 1257 (10th Cir. 2011) (quotation omitted) (alteration omitted).

But to make *any* assessment, to be able to say the district court abused its discretion or got it just right, we must first have some sense of why the district court did what it did.  We need "a concise but clear explanation of its reasons for the fee award," one that affords us an "adequate basis" for assessing whether or not an abuse of discretion took place.  *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quotations omitted).

In this case, we lack that "adequate basis."  After hearing argument from both sides, the district court said simply, "NYA did not engage in behavior that bars its recovery of attorney[']s fees on a *quantum meruit* basis. . . .  Based on the value of services rendered and costs expended, $45,000 is a reasonable fee." Order Regarding Claim of Lien at 2.  Without more to go on, without some insight into how the district court resolved the parties' many and conflicting arguments for more or less money, we are simply unable to pass on the reasonableness of the district court's judgment.

Now, we hardly mean to suggest the district court must render a tome of laborious length and flush with footnotes to avoid the possibility of a remand. We do not require punctiliousness for punctiliousness's sake.  Often the record will be clear enough that we can fairly trace the district court's path even if its opinion fails to give exacting point-by-point directions of the route it followed. Neither, to be sure, is there a geometric formula or rigid rule available here. What matters instead is whether, in each and every case that comes before us, we can fairly say we have enough information to be able to discharge faithfully our legally assigned duty of review.  *See generally N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 834 (10th Cir. 1996) (district courts must "sufficiently articulate specific reasons for fee awards to give us an adequate basis for review") (quotation omitted).

The nature of our difficulty in this case, why we lack sufficient confidence in our ability to render judgment here, can be illustrated by a couple examples.

First, we are asked to pass on whether, under Michigan law (the parties agree that Michigan substantive law applies here), $45,000 represents a reasonable award in *quantum meruit* ("what one has earned") for NYA's contribution to Mr. Diperna's case. Yet, the record before us does not disclose what success Mr. Diperna's case ultimately achieved. And it is difficult (if not always impossible) to assess the value a lawyer added to a contingency case without knowing what value the client obtained. Or at least without knowing why the district court thought the value obtained didn't matter. *See, e.g.*, *Reynolds v. Polen*, 564 N.W.2d 467, 472 (Mich. Ct. App. 1997) (listing *quantum meruit* factors, including "the amount in question and the results achieved").

Second, it isn't clear what NYA's contribution to the cause was — or if, indeed, it was anything at all. Mr. Diperna says NYA unethically abandoned his case at a dark moment in the litigation when things looked truly bleak. He insists that NYA's litigation tactics drove his case to this dark place. He argues the success he ultimately achieved is thanks entirely to his new lawyers and their extensive retooling of his suit's legal theory. And he submits that, while on the job, NYA engaged in an array of utterly unethical conduct. For its part, NYA staunchly defends its conduct and insists it ethically and reasonably incurred billable time much greater than $45,000 in representing Mr. Diperna.

Who's right and who's not in describing the past matters a great deal now. Did NYA abandon its client? Did it engage in unprofessional conduct? Or did NYA faithfully represent Mr. Diperna and add substantial value to his case? If NYA's version of events is correct, maybe it earned the money the court awarded or more. But if its conduct was closer to what Mr. Diperna describes, it may be that *any* award here would be inappropriate as a matter of law. *See Reynolds*, 564 N.W.2d at 470 ("[Q]uantum meruit recovery of attorney['s] fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney."). Without some better understanding of what actually happened, we are stuck, unable to say whether the district court's award was a permissible one. Neither, of course, is this court the place to try to sort through the parties' hotly contested versions of past events. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982) (factfinding generally belongs to "district courts, rather than appellate courts") (quotation omitted).

For all these reasons, the motion to dismiss is denied and the matter remanded for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge